3 F.3d 306
 1993-2 Trade Cases P 70,325, 24 Bankr.Ct.Dec. 922,
Bankr. L. Rep. P 75,383
 In re INTL NUTRONICS, INC., Debtor.
Jerome ROBERTSON, Trustee Chapter 7 Trustee of International
Nutronics, Inc., Plaintiff-Appellant,
v.
ISOMEDIX, INC., a Delaware corporation; Radiation
Sterilizers, Inc., a California corporation
individually and as joint venturers,
Defendants-Appellees.
 No. 91-15253.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 12, 1993.
Decided Aug. 10, 1993.
 
 Jeffrey J. Parish, Andrea J. Ingram, Rosenblum, Parish & Bacigalupi, San Francisco, CA, for plaintiff-appellant.
 Peter J. Busch, Howard, Rice, Nemerovski, Canady, Robertson & Falk, San Francisco, CA, Ian N. Feinberg, Ware & Freidenrich, Palo Alto, CA, for defendants-appellees.
 Appeal from the United States District Court for the Northern District of California.
 Before: CANBY, and BRUNETTI, Circuit Judges, and WILSON,* District Judge.
 CANBY, Circuit Judge:
 
 
 1
 In this case, we must decide whether bid-rigging and anti-trust claims brought by a trustee on behalf of a bankrupt estate are barred by the res judicata effect of a bankruptcy court's sale order.
 
 BACKGROUND
 
 2
 International Nutronics, Inc., the estate in bankruptcy, was in the business of sterilizing medical instruments and other equipment by gamma radiation. The sterilization process involved the use of cobalt-60, an isotope of cobalt. Cobalt-60 is expensive and difficult to acquire. It is highly radioactive, decaying rapidly and losing its value as a source of gamma radiation. It poses significant health risks.
 
 
 3
 At the time it filed for bankruptcy, Nutronics was in possession of two quantities of partially decayed cobalt-60. One was located at Nutronics's facility in Irvine, California; the other, at Nutronics's facility in Palo Alto, California.
 
 
 4
 In November 1987, plaintiff-appellant Robertson, Nutronics's Trustee in bankruptcy, solicited bids for the cobalt-60. Defendant-appellees Isomedix and Radiation Sterilizers, Inc. (RSI), competitors in the radiation sterilization business, submitted separate bids. Isomedix offered to pay seventy cents per curie,[1] or about $600,000, for the Irvine cobalt-60 and to remove the Palo Alto cobalt-60 at the risk and expense of the bankrupt estate. RSI offered to buy the Irvine cobalt-60 for sixty-five cents per curie, curies to be measured by the isotope's radioactivity at the time of delivery three months later. RSI subsequently amended its bid, offering to pay 102% of the amount any competing bidder offered. Neither Isomedix nor RSI offered to purchase the Palo Alto cobalt-60.
 
 
 5
 Robertson rejected both offers. After informing Isomedix and RSI that they were the only bidders for the isotope, Robertson asked them to extend new bids. Isomedix and RSI then notified Robertson that they had formed a joint venture to purchase and remove both supplies of cobalt-60 for $350,000. After Robertson rejected this bid, Isomedix and RSI increased their joint bid by $14,000.
 
 
 6
 Robertson accepted the joint bid and sought from the bankruptcy court an order approving the sale. In neither his letter of acceptance nor his request for a bankruptcy sale order did Robertson express objections to the joint venture. The court issued an order unconditionally confirming the sale.
 
 
 7
 About twenty-two months later, Robertson filed in federal district court a complaint naming Isomedix and RSI as codefendants. Alleging that the joint venture constituted an unlawful combination, the complaint sought relief under 11 U.S.C. Sec. 363(n) and sections 1 and 2 of the Sherman Act, 15 U.S.C. Secs. 1 & 2.
 
 
 8
 The defendants moved for summary judgment, asserting that the claims were barred under the doctrine of res judicata. The district court granted the motion.
 
 ISSUES ON APPEAL
 
 9
 Robertson challenges the district court's grant of summary judgment, contending that the doctrine of res judicata does not foreclose him from seeking damages under 11 U.S.C. Sec. 363(n) or from bringing an action under sections 1 and 2 of the Sherman Act.DISCUSSION
 
 
 10
 I. DOES THE RES JUDICATA EFFECT OF BANKRUPTCY COURT'S SALE ORDER FORECLOSE THE TRUSTEE FROM BRINGING AN ACTION TO VOID A SALE UNDER 11 U.S.C. Sec. 363(n)?
 
 
 11
 Section 363 of the Bankruptcy Code defines the trustee's rights and powers of sale over the assets of the bankrupt estate. Subsection (n) provides:
 
 
 12
 The trustee may avoid a sale under this section if the sale price was controlled by an agreement among potential bidders at such sale, or may recover from a party to such agreement any amount by which the value of the property sold exceeds the price at which such sale was consummated, and may recover [attorney fees and expenses].
 
 
 13
 11 U.S.C. Sec. 363(n) (1993). The statute also provides that the court may award punitive damages against any party who enters a sale price agreement "in willful disregard of this subsection." Id.
 
 
 14
 We agree with Trustee Robertson that the bankruptcy court's sale order does not bar him from asserting a claim under section 363(n). In In re Intermagnetics America, Inc., 926 F.2d 912 (9th Cir.1991), we held that section 363(n) is a "statutory exception to the finality of bankruptcy sale orders for res judicata purposes."[2] Id. at 917. The Intermagnetics holding recognizes that to rule that the res judicata effect of a sale order forecloses the trustee from asserting a claim under section 363(n) "would render meaningless the ability of the bankruptcy trustee to 'avoid a sale' under Sec. 363(n)." Id.[3]
 
 
 15
 The bankruptcy and Article III courts have traditionally possessed the authority to set aside sale orders in bankruptcy cases where the sale is "tinged with fraud, error, or similar defects which would in equity affect the validity of any private transactions" and when "compelling equities outweigh the interests in finality." In re CADA Invs., Inc., 664 F.2d 1158, 1162 (9th Cir.1981). By giving the Trustee the right to avoid a sale if the sale price was arrived at through bid-rigging, section 363(n) supplements the general powers of the court to void a sale. 2 Lawrence P. King, et al., Collier on Bankruptcy, p 363.14 (Lawrence P. King, ed. 15th ed. 1993).
 
 
 16
 II. IS THE TRUSTEE'S ACTION PURSUANT TO 11 U.S.C. Sec. 363(n) BARRED BY THE LIMITATIONS PROVISIONS OF FED.R.CIV.P. 60(b)?
 
 
 17
 Section 363(n) is not, however, a wholly independent exception to the rules of finality. The Federal Rules of Bankruptcy Procedure provide that--with certain exceptions not applicable here--Rule 60 of the Federal Rules of Civil Procedure governs cases under the Bankruptcy Code. Fed.R.Bankruptcy P. 9024, 11 U.S.C. (1984); see also id. advisory committee's note (stating that "all orders of the bankruptcy court are subject to Rule 60 F.R.Civ.P."); CADA, 664 F.2d at 1161 (noting that bankruptcy court's equitable power to set its orders aside "is now formalized in Bankruptcy Rule 924, which makes Federal Rules of Civil Procedure 60 applicable to bankruptcy cases").
 
 
 18
 Rule 60(b) provides six sets of circumstances under which a district court may relieve a party from a final judgment or order. The Trustee's claim under section 363(n) can be characterized only as a motion under clause 3 of Rule 60(b), permitting relief for "fraud ... misrepresentation, or other misconduct of an adverse party." Rule 60(b) imposes a one-year limitations period on such motions. The Trustee did not file the 363(n) claim until twenty-two months after the bankruptcy court issued the sale order; therefore, the claim is time-barred.
 
 
 19
 Accordingly, while we reject the district court's determination that the res judicata effect of the bankruptcy court's sale order barred the Trustee from bringing a claim under section 363(n), we affirm the district court's dismissal of the 363(n) claim.
 
 
 20
 III. DOES THE RES JUDICATA EFFECT OF BANKRUPTCY COURT'S SALE ORDER FORECLOSE THE TRUSTEE FROM BRINGING THE ANTI-TRUST CLAIMS?
 
 
 21
 The doctrine of res judicata bars a party from bringing a claim if a court of competent jurisdiction has rendered final judgment on the merits of the claim in a previous action involving the same parties or their privies. In re Jenson, 980 F.2d 1254, 1256 (9th Cir.1992). Res judicata bars all grounds for recovery that could have been asserted, whether they were or not, in a prior suit between the same parties on the same cause of action. Clark v. Bear Stearns & Co., 966 F.2d 1318, 1320 (9th Cir.1992).
 
 
 22
 The antitrust claims could not have been asserted in the sale order proceeding. The bankruptcy court has jurisdiction to entertain cases arising under the Bankruptcy Code and "core proceedings arising under Title 11." 28 U.S.C. Sec. 157 (Supp.1993). Core proceedings are "matters concerning the administration of the estate" and rights created by Chapter 11. Id.; see also In re Mankin, 823 F.2d 1296, 1299-1307 (9th Cir.1987) (discussing distinction between core and noncore issues), cert. denied, 485 U.S. 1006, 108 S.Ct. 1468, 99 L.Ed.2d 698 (1988). Actions that do not depend on bankruptcy laws for their existence and that could proceed in another court are not core proceedings. In re Castlerock Properties, 781 F.2d 159, 162 (9th Cir.1986). The bankruptcy court may hear noncore matters that are "related to a case under Title 11." 28 U.S.C. Sec. 157(c)(1). But the bankruptcy court is not empowered to render a decision in noncore matters; rather, it submits proposed findings of fact and conclusions of law, which the district court reviews de novo. Id.; In re Mann, 907 F.2d 923, 926 (9th Cir.1990). This distinction between core and noncore matters ensures that the bankruptcy courts will not encroach impermissibly in the province reserved by the Constitution to Article III courts. Mankin, 823 F.2d at 1300-07 (discussing Northern Pipe Line Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982)).
 
 
 23
 The appellees urge us to adopt a "but-for" test to determine whether a proceeding is core or noncore. According to this logic, if a cause of action would not have arisen "but for" the bankruptcy case, it is within the bankruptcy court's jurisdiction. Because the antitrust action could not have arisen without the Trustee's sale of the cobalt-60, the appellees maintain, the antitrust claims constitute core matters. We reject this argument. It conflates the concepts of "arising under Title 11" and arising because of Chapter 11. An action that arises because of a bankruptcy proceeding does not necessarily arise under the Bankruptcy Code.
 
 
 24
 The Trustee's antitrust claims are not core matters. Antitrust claims do not arise under the Bankruptcy Code and they are properly brought before an Article III court. See Castlerock, 781 F.2d at 162. The outcome of the Trustee's cause of action under the Sherman Act will not affect any parties' rights under the administration of the estate. Because the claims could not have been decided by the bankruptcy court, they cannot be precluded by the res judicata effect of the bankruptcy court's sale order. Cf. Latham v. Wells Fargo Bank, 896 F.2d 979, 983 (5th Cir.1990) (holding that lender liability claims are noncore and thus not barred by res judicata effect of bankruptcy proceedings); Howell Hydrocarbons, Inc. v. Adams, 897 F.2d 183 (5th Cir.1990) (holding that action for RICO violations against shareholders, officers and directors of corporations that had filed for Chapter 11 reorganization and had completed confirmation proceedings was not a core proceeding).
 
 CONCLUSION
 
 25
 The district court erred in ruling that the Trustee's action is precluded under the doctrine of res judicata. Section 363 empowers the Trustee to seek to void the sale after the bankruptcy court issues a sale order. However, the Trustee's motion under section 363 is time barred by Rule 60(b) of the Federal Rules of Civil Procedure.
 
 
 26
 The Trustee's antitrust claims, on the other hand, are not barred by res judicata, because the bankruptcy court lacked jurisdiction to entertain the claims.
 
 
 27
 Accordingly, we affirm the district court's dismissal of the Trustee's section 363(n) claim and reverse the dismissal of the antitrust claims. In reversing the dismissal, however, we do not decide whether other affirmative defenses may preclude the Trustee from bringing the antitrust claims.
 
 
 28
 AFFIRMED IN PART; REVERSED IN PART. Each party will bear its own costs.
 
 
 
 *
 Honorable Stephen V. Wilson, United States District Judge for the Central District of California, sitting by designation
 
 
 [1]
 A curie is a unit of radioactivity that measures a specific number of disintegrations per second
 
 
 [2]
 Intermagnetics was decided about a month after the district court issued the summary judgment order in this case
 
 
 [3]
 According to the appellees, Intermagnetics is distinguishable from the present case because the sale of Intermagnetic's assets was procured through fraudulent warranties and fraud upon the court. We disagree. There were three separate and independent grounds for the Intermagnetics court's ruling. That the bankruptcy court had conditioned the sale on representations that turned out to be fraudulent was one ground for reversing the summary judgment order. That the buyers had committed fraud upon the bankruptcy court was a second ground for voiding the sale. That, in granting summary judgment in favor of the buyers, the district court had "failed to address the Trustee's bid-rigging claim under 11 U.S.C. Sec. 363(n)" was a third and separate ground for reversing the district court's judgment. The facts that fraud had been committed and that the bankruptcy court's sale order was conditional did not figure into the Intermagnetics court's interpretation of section 363(n). Intermagnetics, 926 F.2d at 917