**In re AMERICAN PAPER MILLS OF VERMONT, INC., Debtor.**

**No. 02–10923.**

United States Bankruptcy Court.
D. Vermont.

Aug. 3, 2004.

---

John J. Kennelly, Rutland, VT, for Official Committee of Unsecured Creditors.

Norman Williams, Burlington, VT, Robert J. Keach, Portland, ME, for Arcadia Energy LLC, Arcadia, Inc. & Harold Slone.

## ORDER

*GRANTING COMMITTEE'S MOTION FOR AUTHORITY TO COMMENCE AND PROSECUTE ADVERSARY PROCEEDING ON BEHALF OF AMERICAN PAPER MILLS OF VERMONT, INC. PURSUANT TO 11 U.S.C. §§ 1103 AND 1109*

COLLEEN A. BROWN, Bankruptcy Judge.

The Official Committee of Unsecured Creditors ("the Committee") has filed a motion seeking authority to file an adversary proceeding against Arcadia, Inc., Arcadia Energy LLC, and Harold Slone (hereafter referred to in the aggregate as "Arcadia") based on the efforts Arcadia allegedly made to control the bidding and/or sale of the Debtor's facilities in Gilman, Vermont and Dalton, New Hampshire (hereinafter, the "subject properties"). Arcadia responds that the Committee lacks standing, that its claim is time-barred, and that it has not produced facts sufficient to establish a colorable claim against Arcadia.

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1344, 157(b)(2)(N) and the order entered granting final approval of the subject sale (hereinafter, the "Sale Order"). *See* doc. # 215 at ¶ 15.

The arguments presented may be distilled down to three questions: (1) is the Committee's Motion timely; (2) does the Committee have standing to commence an adversary proceeding against Arcadia on behalf of the estate; and (3) would the proposed complaint survive a motion to dismiss. Since the Court answers each of

these questions in the affirmative, it grants the Committee's Motion.

## I.  BACKGROUND

Upon request of the Trustee and with Court approval, Arcadia operated the Debtor's Gilman, Vermont and Dalton, New Hampshire Facilities (hereinafter, "the Facilities") during much of the pendency of this case.  On December 17, 2002, the Trustee filed a motion to sell the Facilities.  *See* doc. # 145.  On December 27, 2002, the Court held an expedited hearing on the motion to sell.  The Court approved the proposed bidding procedure, granted the motion to sell and entered its Preliminary Order outlining the details of the auction of the Facilities.  *See* doc. # 158.  Pursuant to the Preliminary Order, Arcadia was the stalking horse bidder, with an opening bid of $2.7 million; Arcadia would be entitled to a breakup fee if it were not the successful bidder; any interested party was to make a good faith deposit by February 7, 2003; and the auction would be held on February 11, 2004, with the final hearing approving the sale to be conducted at 11:00 A.M. on that day.

An interested party, the Steve Regan Company, submitted a bid for $3,005,000, *see* doc. # 197, before the February 7th deadline.  This prompted Arcadia to file a Motion to Enjoin Auction, *see* doc. # 200, on February 10th, one day before the scheduled auction.  On February 11, 2003, the Court held an emergency telephonic hearing on Arcadia's Motion.  It was during this hearing that allegations about an attempt to control the bidding in connection with the subject sale were first raised. After hearing arguments from the parties, the Court adjourned the matter until February 14, 2003, putting the parties on notice that an evidentiary hearing might be required.

Apparently after the February 11th emergency telephonic hearing there were negotiations between the parties that resulted in Arcadia deciding to withdraw its bid.  In the absence of the Arcadia bid, the Steve Regan Company's bid was the highest bid.  Thus, on February 12, 2003, the parties requested a second emergency telephonic hearing, this time seeking the Court's approval of the sale to the Steve Regan Company.  During this hearing, the Trustee indicated that he would like time to investigate the allegations that Arcadia had engaged in collusive bidding procedures, but also wanted the sale approved as soon as possible.  The Trustee and Arcadia also stated on the record that in consideration of being allowed to withdraw its bid, Arcadia would accept a reduced break-up fee of $100,000.  Arcadia would also be entitled to reimbursement for the reasonable expenses it incurred during the time it operated the Debtor on behalf of the Trustee.  Ultimately, the Court approved both Arcadia's withdrawal of its bid and the Steve Regan Company's final bid of $3,205,000.  *See* Sale Order (doc. # 215).

Arcadia did not file a Motion for Reimbursement of Expenses until the end of March 2003, *see* doc. # 226, noticing it for a hearing in early May 2003.  In early April 2003, Arcadia filed a similar motion seeking reimbursement of its legal expenses in connection with its operation of and attempt to purchase the Debtor's Facilities.  *See* doc. # 228.  The Trustee and the Committee, *inter alia*, filed objections to both Motions.  The Court held an emergency scheduling hearing to address the need for an evidentiary hearing on Arcadia's two reimbursement motions.  At that hearing, the Trustee indicated he was still investigating allegations of Arcadia's attempts to control the bidding.  Eventually, though, the parties reached a stipulation regarding reimbursement of expenses and legal fees and submitted a proposed stipu-

lated order for the Court's approval, making any further hearing on the requested reimbursements unnecessary. As part of their stipulation, Arcadia agreed to release any claims it had against the Debtor's estate. *See* doc. # 248. Importantly, the Trustee did not give a similar release on behalf of the estate.

## II. DISCUSSION

### A. The Committee's Motion is Timely

Arcadia asserts that Fed.R.Civ.P. 60(b)(3), as incorporated into Bankruptcy Rule 9024, imposes a one-year statute of limitations on all actions brought under § 363(n).[1] All parties agree that the Committee's proposed complaint seeks damages under § 363(n), but does not seek to vacate the Sale Order. Arcadia's argument is that since this action is brought under § 363(n) and was not commenced within one year of entry of the Sale Order, it is *ipso facto* time-barred. Evaluation of this argument must begin with Rule 60(b). It provides *inter alia:*

(b) **Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc.** On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons:

. . .

(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;

. . .

The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.

Rule 60(b)(3) (as incorporated into Bankruptcy Rule 9024). Here, the final Sale Order was entered on February 27, 2003, *see* doc # 215, and the Committee filed its Motion on March 3, 2004. There is, therefore, no question that the Committee did not file its proposed complaint within one year of the entry of the Sale Order; it was four days late.

The Court finds no fault with Arcadia's syllogism that if all actions under § 363(n) are governed by the time limitation set forth in Rule 60(b)(3) and if Rule 60(b)(3) bars actions brought more than one year after the entry of the Sale Order, then the proposed § 363(n) complaint filed more than one year after the entry of the Sale Order would be time-barred. There is no flaw in this logic. However, the Court finds the first premise to be fatally flawed and therefore is not persuaded by Arcadia's conclusion. In particular, the Court rejects the assertion that all actions brought under § 363(n) are limited to the one-year time period set forth in Rule 60(b)(3).

Neither party has presented any case which specifically determines the statute of limitations for a suit seeking recovery of damages from a party who entered into an agreement to control a sale under § 363(n), but which is not seeking to vacate the sale. Section 363(n) provides for more than one type of relief:

(n) The trustee may avoid a sale under this section if the sale price was controlled by an agreement among potential bidders at such sale, *or* may recover from a party to such agreement any amount by which the

---

1. Unless otherwise noted, all statutory references are to Title 11 of the Unites States Code (the "Bankruptcy Code").

value of the property sold exceeds the price at which such sale was consummated, and may recover any costs, attorneys' fees, or expenses incurred in avoiding such sale or recovering such amount. *In addition* to any recovery under the preceding sentence, the court may grant judgment for punitive damages in favor of the estate and against any such party that entered into such agreement in willful disregard of this subsection.

11 U.S.C. § 363(n) (emphasis added). The many cases which address a trustee's (or committee's) right to proceed under § 363(n), and in particular the cases which address the time period within which such an action must be brought, all address causes of action filed against the successful bidder and aimed at setting aside the sale. *See Penco Food Corp. v. DelPrete (In re Clinton Street Food Corp.)*, 254 B.R. 523 (Bankr.S.D.N.Y.2000); *Robertson v. Isomedix, Inc. (In re Intl. Nutronics, Inc.)*, 28 F.3d 965 (9th Cir.1994); *Tri–Cran, Inc. v. Fallon (In re Tri–Cran, Inc.)*, 98 B.R. 609 ˙ (Bankr.D.Mass.1989). These cases consistently hold that since a plaintiff/movant is seeking to modify or vacate an order approving a sale, the time period set forth in Rule 60 requires that the action be brought within one year of entry of such sale order.

The Committee argues that application of that rule is inapposite here because it is not seeking to displace the successful bidder nor to set aside the order approving the sale. Arcadia characterizes that position as "ridiculous," insisting that the time period for prosecuting a claim under § 363(n) should not be determined by the identity or role of the defendant. The Court agrees that the identity of the defendant is not the determinative factors; rather, the critical question is the nature of the relief sought. Thus, the Court's analysis of the statute of limitations issue turns upon the nature of the relief sought by the Committee.

There is no question that the statute would have been clearer if Congress had bifurcated § 363(n) into two distinct provisions: one provision that allowed damages from potential bidders who engaged in efforts to control the bidding; and another provision that allowed the trustee to set aside a sale based on the impact of such an agreement. However, Congress did not do that; rather, it conglomerated into a single subsection both remedies that are available against parties involved in schemes to control bidding.[2] In § 363(n), one of the remedies articulated is the setting aside of a judgment. The cases where courts held that such actions must be brought within one year did so because the

---

**2.** In fact, the legislative history actually refers to this provision as three distinct remedies: Subsection [(n)] is directed at collusive bidding on property sold under this section. It permits the trustee to void a sale if the price of the sale was controlled by an agreement among potential bidders. The trustee may also recover the excess of the value of the property over the purchase price, and may recover any costs, attorney's fees, or expenses incurred in voiding the sale or recovering the difference. In addition, the court is authorized to grant judgment in favor of the estate and against the collusive bidder if the agreement controlling the sale

price was entered into in willful disregard of this subsection. The subsection does not specify the precise measure of damages, but simply provides for punitive damages, to be fixed in light of the circumstances. H.R.Rep. No. 595, 95th Cong. 1st Sess. 346 (1977), U.S.Code Cong. & Admin.News 1978, 5963, 6302–03; S.Rep. No. 989, 95th Cong.2d Sess. 57 (1978), U.S.Code Cong. & Admin.News 1978, 5787, 5843. For purposes of this decision, the Court will focus on the options of either setting aside the sale or obtaining damages without setting aside the sale.

plaintiff/movant was seeking to set aside a judgment and Rule 60 is the one and only federal rule addressing this specific type of relief. It fosters consistency and predictability to rely on Rule 60 for all actions seeking to set aside judgments. If the Committee were seeking to set aside the Sale Order in this case, then the Court would endorse Arcadia's analysis and find the Committee's complaint to be time-barred. However, that is not the relief being sought by the Committee. Thus, since the Court is not aware of any statute which mandates that the same statute of limitations applies to all causes of action found within a single statutory subsection and since the Committee is not seeking to set aside any order, the Court finds that Rule 60 does not apply to the relief sought herein by the Committee.

The Court must then determine what time period applies to an action seeking to impose sanctions under § 363(n). Neither party has pointed to any case which addresses this particular issue. However, the Court finds the case of *Szybist v. Aircraft Acquisition Corp. (In re Taylorcraft Aviation Corp.)*, 163 B.R. 734 (Bankr. M.D.Pa.1993), to be precisely on point and absolutely sound. In reliance upon MOORE'S FEDERAL PRACTICE, the *Taylorcraft* court found that where the movant seeks not to set aside the sale, but instead to impose sanctions based upon collusive bidding behavior, that the statute of limitations is the state law statute of limitations for filing a fraud action in the state courts:

> This Court, however, does not agree that the one (1) year limitation period provided for in Rule 60 is the actual statute of limitations that this Court should look to in making the instant determination.... 2 Moore's Federal Practice ¶ 3.08[2] at page 3–43, provides

that "In actions where a federally-created right is being enforced but there is no controlling federal statute of limitations, a federal court will ordinarily 'borrow' the most closely analogous state statute of limitations of the state where the district court is held, including its borrowing statute." [Footnotes omitted.] There is no federal statute of limitations and consequently, we look to Pennsylvania law particularly 42 Pa. C.S.A. § 5524(7) and determine that the appropriate statute of limitations for fraudulent or otherwise tortious conduct must be brought within two (2) years. *See In re Truco, Inc.,* 110 B.R. 150 (Bankr.M.D.Pa.1989); *In re Shields,* 148 B.R. 783 (Bankr.E.D.Pa.1993). While this Court acknowledges that a Trustee's attempt to void an Order under Section 363(n) is subject to the time limitations imposed in Rule 60 (*see In re Intl. Nutronics, Inc.,* 3 F.3d 306 (9th Cir.(Cal.)[1993])), the Trustee, in this case, is not seeking to avoid an Order approving the sale as in the *In re Intl. Nutronics, Inc.* case *supra.* and *Matter of Met–L–Wood Corp.,* 861 F.2d 1012 (7th Cir.1988).... Here ... the Trustee requests that judgment be entered against the Defendants determining that the fair market value of the property sold at the time of sale was [higher than the sale price and requests damages in an amount equal to this difference].... Consequently, the Court determines that the applicable statute of limitations is the two (2) years as provided in 42 Pa.C.S.A. § 5524(7).

*Id.* at 737–38. This Court adopts the rationale and conclusion set forth in *Taylorcraft* on this point and applies it to the instant dispute.[3] Accordingly, the Court

---

**3.** The Court recognizes that the *Clinton Street* case cited by Arcadia may also be on point. However, that case is factually distinct from the present case (*e.g.,* the lack of mutual re-

finds that in order to be timely, the Committee's complaint had to have been filed within the time period set forth in the statute of limitations for a fraud action in Vermont. *See* 12 V.S.A. § 511. Since the Committee's Motion and proposed complaint were filed with six years of the alleged agreement to control the bidding, and hence was within the time period set forth in the Vermont statute controlling fraud actions, it is timely. Therefore, the Court finds the Committee's complaint is not time-barred.

## B. The Committee Has Standing

■ Arcadia asserts next that the Committee lacks standing to file the instant complaint. The Court finds *Glinka v. Murad (In re Housecraft Indus. USA, Inc.)*, 310 F.3d 64 (2d Cir.2002), to be controlling on the question of whether the Committee has standing to proceed against Arcadia in this matter. In *Housecraft* the Second Circuit addressed the very issue raised herein and held that for a committee to have standing to bring an action normally reserved to the trustee, two criteria must be established:

(i) the Committee must have the consent of the debtor in possession or trustee, and

(ii) the Court finds that suit by the committee is

(a) in the best interests of the bankruptcy estate, and

(b) is "necessary and beneficial" to the fair and efficient resolution of the bankruptcy proceedings.

*Id.* at 70 (quoting *Commodore Int'l, Ltd. v. Gould (In re Commodore Int'l, Ltd.)*, 262 F.3d 96, 100 (2d Cir.2001)).

■ After considering the arguments, memoranda of law, and affidavits filed in connection with the Committee's motion, as well as the record relating to the underlying sale, the Court finds both criteria have been established here. First, the Court finds that the Trustee has consented to the Committee's prosecution of the § 363 claims against Arcadia. There is no dispute as to this fact since the Trustee stated on the record, in open court, that he could not prosecute this cause of action as he would likely be a witness in the proceeding. Second, the Court finds that the Committee's punitive suit is in the best interest of the bankruptcy estate because, if successful, it would result in a money judgment in favor of the chapter 11 estate, against an apparently solvent party. Further, the action is necessary and beneficial to the fair resolution of the allegations raised at the time of the sale of the Facilities.[4]

leases in the instant case). More importantly, the Court finds that the *Clinton Street* ruling of Judge Bernstein relied upon: (1) the fact that all of the trustee's claims were dependent on the bid rigging scheme *and* the issuance of a sale order, *see Clinton Street*, 254 B.R. at 531; and (2) Judge Garrity's earlier ruling that any equitable or legal claims relating to bid rigging under § 363(n) were barred by the one-year statute of limitations established under Rule 60(b)(3), was the law of the case, *see id.* Because of Judge Bernstein's heavy reliance upon the law of the case, the Court does not find the *Clinton Street* case to be as helpful. to resolution of the instant dispute as *Taylorcraft*. Finally, as between the two con-

flicting decisions, the Court finds the *Taylorcraft* rationale regarding the determination of the applicable statute of limitations to be more legally sound.

4. The Arcadia parties urge this Court to require the Committee to prove that they have a colorable claim as a condition to conferring standing, in reliance upon *Unsecured Creditors Committee of the Debtor v. Noyes (In re STN Enter.)*, 779 F.2d 901 (2d Cir.1985). The Court holds that *Housecraft*, rather than *STN*, controls but nevertheless addresses the issue below.

Arcadia's argument on the question of the Committee's standing draws the Court's attention to the potential negative impact the pursuit of this lawsuit could have on the estate if the Committee were not successful. In that event there would be no financial benefit to the estate and, conceivably, there could be a significant legal expense to be paid. In light of the rather unusual nature of the relief sought by the Committee (namely a claim for § 363(n) damages from a party who was not the successful bidder) and the consequent uncertainty of outcome, the Court finds Arcadia's contentions regarding benefit to the estate to be meritorious. Accordingly, the Court places the Committee on notice that the Committee will not be entitled to reimbursement from the estate unless the suit is sufficiently successful to pay some money to the estate in addition to paying the attorney's fees. It will be up to the Committee to determine whether to seek counsel to prosecute this action on a contingency fee basis or for members of the Committee to take the financial risk of proceeding. The Court cannot authorize the suit to go forward with the estate bearing all of the risk. Moreover, imposition of this condition is necessary to satisfy the eligibility criteria imposed by the Second Circuit in *Housecraft. See also Commodore Int'l, Ltd. v. Gould (In re Commodore Int'l, Ltd.)*, 262 F.3d 96, 100 (2d Cir. 2001).

### C. The Merits of the Complaint

Arcadia's final attack on the proposed complaint is on the merits. It asserts that the allegations of the complaint: (i) are time-barred pursuant to Rule 60(b)(3); (ii) are barred by the doctrines of *res judicata* and waiver; and (iii) fail to state any claim upon which relief may be granted pursuant to Rule 12(b)(6). None of these arguments persuade the Court that the Committee should be deprived the opportunity to proceed with its claims against Arcadia.

The Court has already addressed the timeliness argument and holds that the complaint is not time-barred. Arcadia's arguments based upon *res judicata* and waiver must fail because the sole foundation for this position is the alleged release language of the Order awarding fees to Arcadia. The relevant paragraph of that June 4, 2003 Order provides:

**IT IS FURTHER ORDERED** that payment of the above sums, together with the break up fee, shall be in complete satisfaction of any claims by Arcadia against the bankruptcy estate pursuant to (a) the Preliminary Order Pursuant toll U.S.C. §§ 105(a), 328(a), 363(f), 363(*l*), 365(a), and 506(c) and Bankruptcy Rules 2002, 4001, 6004, and 6006, (1) Approving the Sale of Real and Personal Property owned by the Debtor located in Gilman, Vermont, and Dalton, New Hampshire, Free and Clear of All Liens, Claims and Encumbrances, and Subject to Overbid, (2) Authorizing and Scheduling an Auction, Establishing Overbid Procedures and Approving Termination Fee, (3) Authorizing the Grant of a Priority Lien on the Real and Personal Property to be Sold, (4) Approving and Authorizing Payment of a Brokerage Commission, and (5) Scheduling a Hearing on Final Approval of the Sale to the Highest and Best Bidder at the Auction, entered on December 27, 2002, (b) the Order Pursuant to 11 U.S.C. " [*sic*] 105(a), 328(a), 363(b), 363(f), 363(m), 364(d)(1), and 506(c) and Bankruptcy Rules 2002, 4001, 6004, and 6006, (1) Approving the Sale of Real and Personal Property Owned by the Debtor Located in Gilman, Vermont and Dalton, New Hampshire to SRC Corp. d/b/a Steve Regan Company, Free and Clear of all Liens, Claims and Encumbrances, (2) Approving the Withdrawal by Arcadia

Energy LLC of its Bid, and (3) Approving and Authorizing Payment of a Brokerage Commission and Expenses, entered on February 27, 2003, (c) Arcadia's two Motions for Reimbursement referenced above, (d) claims pursuant to 11 U.S.C. § 503(b), and (e) the letter agreements between Arcadia and the bankruptcy estate dated November 27, 2002. Stipulated Order Regarding Reimbursement of Certain Expenses and Legal Fees Incurred by Arcadia Energy, LLC at 2 (June 4, 2003) (doc. # 248) (hereinafter, the "Reimbursement Order"). This language makes clear that the payment of the sums authorized in the Reimbursement Order "shall be in complete satisfaction of any *claims by Arcadia against the bankruptcy estate,*" *id.* (emphasis added), but contains no reciprocating provision which releases Arcadia from claims against it by the estate. Arcadia's argument that such reciprocity is implied is not convincing. These parties were in litigation, and the allegation that there had been collusive bidding was already before the Court. If Arcadia wanted to obtain, and the Committee or Trustee wanted to give, a release of such claims, it would have been reflected in the Reimbursement Order. No such provision was included. Moreover, at this point in time the Trustee was still conducting his investigation into the collusive bidding allegations. *See* Sale Order at ¶ 12 ("[N]othing herein shall prevent the Trustee from fully investigating the sale of the Facility and bringing any such actions that he deems appropriate against any parties, including pursuant to 11 U.S.C. § 363(n)."). Thus, when Arcadia sought to be paid prior to the Trustee's completion of his investigation, it had to know that its payment was made notwithstanding the

ongoing investigation.[5] To allege now that it believed that the Reimbursement Order constituted a release by the Trustee of any claim the estate might have against Arcadia because of collusive bidding is simply not convincing.

Moreover, the cases relied upon by Arcadia in support of this prong of its argument are, again, cases in which a trustee is seeking to void a sale rather than to collect damages based on fraud. *See Clinton Street,* 254 B.R. 523; *Intl. Nutronics,* 28 F.3d 965; *Tri–Cran,* 98 B.R. 609.

■ In analyzing Arcadia's Rule 12(b)(6) argument, the Court relies upon one of the cases cited by Arcadia, namely, *Clinton Street,* which very clearly sets forth the Rule 12(b)(6) standard:

> The rules that guide a court's consideration of a motion to dismiss under Fed. R. Civ. P 12(b)(6) are well settled. The court must assume the facts alleged in the complaint to be true, *Harsco Corp. v. Segui,* 91 F.3d 337, 341 (2d Cir.1996), and draw all reasonable inferences in the plaintiff's favor. *Scheuer v. Rhodes,* 416 U.S. 232, 236[, 94 S.Ct. 1683, 40 L.Ed.2d 90] (1974). The Court may only dismiss the complaint if it appears beyond doubt that the plaintiff would not be entitled to any type of relief, even if he proved the factual allegations in his complaint, *Conley v. Gibson,* 355 U.S. 41, 45–46[, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)]; *Harsco Corp* at 341; *Cohen v. Koenig,* 25 F.3d 1168, 1171–72 (2d Cir. 1994).

*Clinton Street,* 254 B.R. at 530. Thus, the Court cannot and need not make a determination as to the likelihood of success of the proposed complaint. It need only determine that the cause of action is color-

---

5. At the April 6, 2004 hearing, the Trustee reported that he had recently completed his investigation; there is no question that it was not completed as of the date of the Reimbursement Order.

able. The complaint the Committee proposes to file alleges *inter alia:*

(1) defendant Slone offered to pay defendant Webster $25,000 if Webster terminated any interest in the bidding process of the subject property;

(2) defendant Webster then tried to persuade defendant Wegner to cease his participation in the subject property's sale;

(3) defendant Slone offered Kaster, as a representative of the Steve Regan Company, $200,000 to forebear from bidding on the subject property;

(4) in compliance with defendant Slone's request, defendant Webster did not participate in the bidding;

(5) the fair market value of the property was between $3,200,000 and $7,500,000 at the time of sale and the estate only sold the property for $3,100,000;

(6) defendants Slone and Arcadia Energy LLC knew of these agreements to control the bidding and failed to disclose them to the Court;

(7) defendants Slone and Arcadia took steps to discourage potential interested parties from viewing the subject property; and

(8) the conduct of defendants Slone and Arcadia, as well as their fraudulent concealment of the efforts to control the bidding, caused financial injury to the estate.

Based upon these allegations, the Court finds that it is not beyond doubt that the Plaintiff will be entitled to some type of relief if it proved these allegations. Accordingly, the Rule 12(b)(6) prong of Arcadia's argument must fail.

Since the proposed complaint is not time-barred, is not barred by principles of *res judicata*, claim preclusion or waiver, and can survive a Rule 12(b)(6) motion, the Court finds no basis for denying the Committee's Motion to proceed with prosecution of its complaint on any of the grounds asserted by Arcadia. On the contrary, the Court finds that the Committee should be permitted to have its day in court, air the serious allegations it has raised, and obtain a determination as to whether there was an agreement to control the bidding in this case and, if so, whether that agreement resulted in a price which was less than the fair market value of the subject property, and, if so, whether the parties to the agreement entered into the agreement in wilful violation of § 363. To rule otherwise would allow parties seeking to control bidding in a bankruptcy case to go through the system unscathed simply because they had the legal savvy to recognize the risk they faced when their scheme was revealed and, therefore, withdrew their bid.

The Court makes no determination now on the likelihood of success on the merits of the Committee's complaint or on the nature of Arcadia's conduct.[6] Rather, this ruling is intended to make three points: first, the Committee has met its burden of proof that it has a colorable claim; second, that the statute of limitations for an action under § 363(n) that does not seek to set aside a sale order is governed by the state statute of limitations for fraud actions rather than by Federal Rule 60(b)(3); and, third, that parties who are accused of controlling bidding in a bankruptcy sale cannot avoid suit under § 363(n) simply by withdrawing their bid.

---

**6.** In fact, the Court observes that the Committee is sailing into relatively unchartered waters in pursuing this action which names defendants who were not the successful bidders, which does not seek to set aside the Sale Order, and which requires a showing that the sale price of a difficult-to-evaluate asset was less than fair market value.

### III. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that the Committee's Motion for Authority to Commence and Prosecute Adversary Proceeding on Behalf of the Estate of American Paper Mills of Vermont, Inc. Pursuant to 11 U.S.C. §§ 1103 and 1109 is GRANTED.

IT IS FURTHER ORDERED that the Committee may proceed with its proposed adversary proceeding seeking damages under § 363(n) subject to the condition that the estate will not be bound to pay any legal fees unless the estate benefits from the proceeding.

**SO ORDERED.**