**UNITED STATES COURT OF APPEALS**

**May 18, 2016**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

        Plaintiff–Appellee,

v.

ELIAS HERRERA-ZAMORA,

        Defendant–Appellant.

No. 15-1251
(D.C. Nos. 1:13-CV-02126-PAB and
1:11-CR-00279-PAB-2)
(D. Colo.)

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]

Before **HOLMES**, **MATHESON**, and **PHILLIPS**, Circuit Judges.

Federal prisoner Elias Herrera-Zamora seeks a certificate of appealability

("COA") to appeal from the district court's denial of his motion to vacate, set

aside, or correct his sentence under 28 U.S.C. § 2255. In his motion, Mr.

Herrera-Zamora alleged, *inter alia*, that he received ineffective assistance of

counsel that prevented him from availing himself of safety-valve relief under 18

U.S.C. § 3553(f). Exercising jurisdiction under 28 U.S.C. § 1291, we **deny** Mr.

Herrera-Zamora's request for a COA and **dismiss** this matter.

---

    [*]    This order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

# I

Mr. Herrera-Zamora pleaded guilty to conspiracy to distribute and possess with intent to distribute fifty grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii), & 846. The district court sentenced Mr. Herrera-Zamora to 188 months' imprisonment and five years of supervised release. A panel of this court dismissed Mr. Herrera-Zamora's direct appeal of his sentence, concluding that the appellate waiver in his plea agreement was enforceable. *See United States v. Herrera-Zamora*, 521 F. App'x 714, 715–16 (10th Cir. 2013).

Mr. Herrera-Zamora filed a pro se motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. He alleged, *inter alia*, that he received ineffective assistance of counsel because his attorney "failed to allow [him] to debrief with the government in order to obtain the safety valve." R., Vol. I, at 78 (Mot. to Vacate, filed Aug. 8, 2013). *See, e.g.*, *United States v. Figueroa-Labrada*, 780 F.3d 1294, 1296–97 (10th Cir. 2015) (explaining that the "safety-valve" provision of 18 U.S.C. § 3553(f) "allows a defendant to receive a sentence lower than an applicable mandatory minimum sentence if, *inter alia* . . . he truthfully provides the government all the information he possesses regarding his offenses"). Mr. Herrera-Zamora claimed that his counsel "mistakenly informed" him that he could "satisf[y] the safety valve requirements" solely by participating in a "codefendant meeting" and that he did not have to cooperate further with the

government to receive safety-valve relief. R., Vol. I, at 78. The district court denied his § 2255 motion and also denied him a COA. Mr. Herrera-Zamora now seeks a COA to appeal from the denial of his § 2255 motion.[1]

## II

### A

"The issuance of a COA is a jurisdictional prerequisite to an appeal from the denial of an issue raised in a § 2255 motion." *United States v. Gonzalez*, 596 F.3d 1228, 1241 (10th Cir. 2010); *see* 28 U.S.C. § 2253(c)(1)(B). We will only grant a COA where the applicant makes a "substantial showing of the denial of a constitutional right." *Allen v. Zavaras*, 568 F.3d 1197, 1199 (10th Cir. 2009) (quoting 28 U.S.C. § 2253(c)(2)). "To make such a showing, an applicant must demonstrate 'that reasonable jurists could debate whether (or, for that matter, agree that) the [motion] should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.'" *Id.* (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

"Where a 'COA application rests on claims of ineffective assistance of counsel, in order to determine if [an applicant] can make a substantial showing of the denial of a constitutional right we must undertake a preliminary analysis . . . in light of the two-part test for ineffective assistance' articulated by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984)." *United States v.*

---

[1] Mr. Herrera-Zamora is represented on appeal by appointed counsel.

3

*Harris*, 404 F. App'x 264, 266 (10th Cir. 2010) (quoting *United States v. Harris*, 368 F. App'x 866, 868 (10th Cir. 2010)).

To demonstrate ineffective assistance of counsel under *Strickland*, a defendant must show both that "his counsel's performance was constitutionally deficient, i.e., it fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's errors, the outcome of the proceedings would have been different." *Moore v. Reynolds*, 153 F.3d 1086, 1096 (10th Cir. 1998); *accord Strickland*, 466 U.S. at 688, 694. "[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697; *see Hooks v. Workman*, 606 F.3d 715, 724 (10th Cir. 2010) ("[I]f [a defendant] is unable to satisfy his burden under *Strickland*'s prejudice prong, it is unnecessary to determine whether counsel's performance was deficient."); *Gilson v. Sirmons*, 520 F.3d 1196, 1248 (10th Cir. 2008) (declining to address defendant's arguments on deficient performance where defendant failed to satisfy the prejudice prong).

Mr. Herrera-Zamora's ineffective-assistance-of-counsel claim is that his counsel provided constitutionally deficient representation by telling him that he did not have to provide information to the government in order to qualify for safety-valve relief. Section 3553(f) of Title 18 authorizes a district court to provide safety-valve relief by sentencing a defendant under the United States Sentencing

4

Guidelines Manual ("Guidelines" or "U.S.S.G.") "without regard to any statutory

minimum sentence." 18 U.S.C. § 3553(f); *see, e.g.*, *United States v. Cervantes*, 519 F.3d

1254, 1255 (10th Cir. 2008). Furthermore, if a defendant satisfies all of the statutory

criteria for safety-valve relief, the Guidelines call for a two-level reduction in the

defendant's base offense level. *See* U.S.S.G. §§ 2D1.1(b)(16), 5C1.2(a).[2] As relevant

here, in order to qualify for safety-valve relief, a defendant must "truthfully provide[] to

the Government all information and evidence the defendant has concerning the offense or

offenses that were part of the same course of conduct or of a common scheme or plan."

18 U.S.C. § 3553(f)(5).

"The scope of disclosure required [for safety-valve relief] is very broad." *United*

*States v. Stephenson*, 452 F.3d 1173, 1180 (10th Cir. 2006). "A defendant's

disclosure . . . 'must not merely be truthful but also complete.'" *United States v.*

*Altamirano-Quintero*, 511 F.3d 1087, 1098 (10th Cir. 2007) (quoting *Stephenson*, 452

F.3d at 1180). To satisfy this burden, a defendant must provide information as to "the

offense of conviction and all relevant conduct," *id.* at 1096 (quoting *Stephenson*, 452 F.3d

at 1180), which "comprises more, often much more, than the offense of the conviction

itself, and may include uncharged and even acquitted conduct," *id.* at 1095 (quoting

*United States v. Allen*, 488 F.3d 1244, 1254–55 (10th Cir. 2007)). A defendant charged

with conspiracy, like Mr. Herrera-Zamora, must "identify[] the other participants in the

---

[2]     The district court used the 2012 edition of the Guidelines in
sentencing Mr. Herrera-Zamora. He relies on this edition in presenting his
arguments before us, and so do we.

5

conspiracy, or at least explain[] why he is unable to identify those other participants," *id.* at 1098, and "disclose[] . . . 'all information' concerning the offense of conviction and the acts of others," *United States v. Acosta-Olivas*, 71 F.3d 375, 378 (10th Cir. 1995). "[T]he fact that the defendant has no relevant or useful other information to provide . . . shall not preclude a determination by the court that the defendant has complied with this requirement." 18 U.S.C. § 3553(f)(5).

## B

### 1

Mr. Herrera-Zamora argues that his lawyer rendered ineffective assistance of counsel by telling him that he did not have to provide information to the government in order to qualify for safety-valve relief under 18 U.S.C. § 3553(f), and that, but for his lawyer's advice, he would have cooperated in this manner with the government. Addressing this claim under the prejudice prong set forth in *Strickland*, 466 U.S. at 691–92, we conclude that reasonable jurists could not debate the correctness of the district court's decision to deny Mr. Herrera-Zamora's § 2255 motion and would not conclude that there are issues present that deserve encouragement to proceed further.

Specifically, Mr. Herrera-Zamora has not shown a reasonable probability that but for his lawyer's advice, he would have been willing to cooperate with the government by making the requisite disclosures. Mr. Herrera-Zamora asks us to take him at his word—that is, his testimonial response, "Yes"—that he would have cooperated with the government had his lawyer encouraged him to do so. The district court found Mr.

6

Herrera-Zamora's one-word response "not credible." R., Vol. II, at 134 (Mot. Hr'g Tr., dated July 9, 2015). Based on our review of the record, we believe that the court's factual finding is not clearly erroneous, so we will not disturb it on appeal. *See United States v. Orange*, 447 F.3d 792, 796 (10th Cir. 2006) (stating that, in reviewing a denial of a § 2255 motion, we review the district court's legal rulings de novo and its factual findings for clear error).

More specifically, the record strongly indicates that regardless of his counsel's advice, Mr. Herrera-Zamora would not have cooperated with the government by providing information. From the outset of his criminal case, Mr. Herrera-Zamora refused to cooperate with the government, at least in part because he feared that doing so would endanger the safety of his family. In fact, Mr. Herrera-Zamora admitted that he successfully moved for the withdrawal of his first two court-appointed attorneys because they encouraged him to cooperate with the government in exchange for a better deal.

Nevertheless, Mr. Herrera-Zamora contends that had the lawyer he subsequently retained—his third—told him to cooperate, he would have suddenly reversed course and disclosed all of the relevant information he possessed to the government. In this regard, Mr. Herrera-Zamora argues that his late-blooming willingness to cooperate was the result of certain new circumstances that arose after he retained his third lawyer. We conclude, however, that none of these allegedly new circumstances would lead a reasonable jurist to debate the correctness of the district court's decision to reject his *Strickland* claim, nor to conclude that there are issues worthy of encouragement to proceed further.

First, Mr. Herrera-Zamora argues that "[a]fter he fired his first two attorneys . . . his codefendants agreed to plead guilty," Aplt.'s Opening Br. at 2, and that this "abat[ed] his fear of retaliation," *id.* at 17, making him amenable to cooperating for the first time while represented by his retained counsel. But the record is clear that Mr. Herrera-Zamora knew or should have known that three of his four co-defendants had already pleaded guilty *before* he filed his motion to have his second attorney withdraw—and he filed that motion precisely because his lawyer had urged him to cooperate. This sequence of events naturally raises the question: if his co-defendants' guilty pleas did not prompt Mr. Herrera-Zamora to cooperate when he was represented by his second counsel, why would such guilty pleas have had this effect when he was represented by his third? What changed? Mr. Herrera-Zamora offers no answer, and none is readily apparent to us. Accordingly, his first argument is unpersuasive.

Mr. Herrera-Zamora makes his two remaining arguments for the first time on appeal. Because he does so without arguing for plain-error review, these arguments are effectively waived on appeal. *See e.g., Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1131 (10th Cir. 2011) ("[T]he failure to argue for plain error and its application on appeal . . . surely marks the end of the road for an argument for reversal not first presented to the district court.").

But even if we were to consider Mr. Herrera-Zamora's new arguments, they would not avail him. In this regard, Mr. Herrera-Zamora argues that he would have followed his third attorney's advice to cooperate because that attorney was retained by his family,

whereas the prior two were appointed by the court. Specifically, he argues that "his family['s] trust[]" in his retained attorney "*may have* given Mr. Herrera-Zamora more reason also to trust his new attorney's advice." Aplt.'s Opening Br. at 21 (emphasis added). However, the mere possibility that Mr. Herrera-Zamora may have placed more trust in his retained attorney would not have caused a reasonable jurist to debate whether there was a *reasonable probability* that he would have cooperated had his retained attorney instructed him to do so. *See, e.g., Foster v. Ward*, 182 F.3d 1177, 1186 (10th Cir. 1999) ("[T]he mere possibility that Ms. Fuller's testimony could reflect on Mr. Foster's credibility is insufficient to satisfy the 'reasonable probability' standard [under *Strickland*'s prejudice prong].").

Lastly, Mr. Herrera-Zamora asserts for the first time on appeal that he was more willing to cooperate while he had retained counsel because "trial was approaching." Aplt.'s Opening Br. at 21. But he provides no further explanation or specific dates to bolster this argument. And our independent review of the relevant timeline does not avail Mr. Herrera-Zamora. Mr. Herrera-Zamora's trial date was set for December 10, 2012. His retained counsel (i.e., his third) first appeared on Mr. Herrera-Zamora's behalf on November 27, 2012. On November 30, 2012, Mr. Herrera-Zamora entered a guilty plea, at which point his December 10 trial date was vacated. Surveying this timeline with full knowledge of Mr. Herrera-Zamora's demonstrated inclination not to cooperate, we are hard-pressed to believe that the trial was significantly more imminent in Mr. Herrera-Zamora's mind such that he would have been inclined to sharply change course and

9

cooperate on November 29, 2012—the last day that he was represented by his retained counsel before he pleaded guilty—than it was to him on November 26, 2012—the last day he was represented by his second lawyer. Yet, far from seeking to cooperate on November 26, Mr. Herrera-Zamora caused his second attorney to withdraw because the attorney urged him to cooperate. At least absent further explication from Mr. Herrera-Zamora (which he has had an opportunity to provide here but has not), we consider this argument wholly unpersuasive. More to the point, we do not believe that this argument would cause reasonable jurists to debate the correctness of the district court's bottomline finding that Mr. Herrera-Zamora did not demonstrate ineffective assistance of counsel under *Strickland* or to conclude that there were issues worthy of proceeding further.

In sum, we conclude on this ground that Mr. Herrera-Zamora is not entitled to a COA on his ineffective-assistance claim.

**2**

Moreover, even if Mr. Herrera-Zamora had been able to demonstrate a reasonable probability that he would have cooperated, we conclude that he still would not be entitled to a COA. This is because he failed to give the district court enough information for it to conclude, as *Strickland* requires, that there was a reasonable probability that, but for his counsel's purported ineffectiveness, the result of the proceeding would have been different—*viz.*, he failed to make a showing that there is a reasonable probability that the sentencing court would have found his "disclosure . . . 'truthful [and] complete'" and, in turn, would have granted safety-valve relief. *See Altamirano-Quintero*, 511 F.3d at 1098

10

(quoting *Stephenson*, 452 F.3d at 1180). Mr. Herrera-Zamora never told the district court in the instant case what information he would have disclosed to the government to qualify for safety-valve relief. As a result, he left the district court powerless to conclude that there was a reasonable probability that the sentencing court would have granted such relief.

For the first time on appeal, Mr. Herrera-Zamora now identifies, in vague terms, certain information that he could have disclosed to the government regarding his offense and the operations of the conspiracy. Specifically, Mr. Herrera-Zamora says that his plea agreement reveals that he "had information to give regarding his co-defendants . . . and their interactions relevant to the conspiracy" and that "[h]e could provide information regarding identities of both buyers and sellers of methamphetamine and at what quantities they bought or sold." Aplt.'s Opening Br. at 23. Mr. Herrera-Zamora maintains that "[t]his information is precisely what courts require defendants to disclose to meet § 3553(f)(5)," *id.*; consequently, he reasons that his lawyer's purported ineffectiveness prejudiced him by preventing him from obtaining safety-valve relief. However, we do not believe that Mr. Herrera-Zamora's contention in this regard would lead reasonable jurists to debate the correctness of the district court's resolution of his *Strickland* claim or to believe that there were issues worthy of proceeding further.

First, we must observe that Mr. Herrera-Zamora has effectively waived this tardy argument by failing to request plain-error review from this court. *See, e.g.*, *Richison*, 634 F.3d at 1131. Second, Mr. Herrera-Zamora's assertion that he had *some* relevant

11

information that he *could have disclosed* misapprehends his burden. Under *Strickland*, he must demonstrate that there is a reasonable probability that his information was of the quality that it would have caused the sentencing court to grant safety-valve relief. Mr. Herrera-Zamora has made no such showing to us, much less to the district court in his § 2255 proceeding.

A panel of our court has underscored the difficulty in showing prejudice when a defendant claims that his counsel's faulty advice precluded him from eligibility for safety-valve relief:

> [S]afety valve consideration is just that—consideration. Even if [the defendant] had been given the opportunity to proffer information to the government for safety valve analysis, it is possible that he would not have been awarded safety valve relief under 18 U.S.C. § 3553(f). The government and the sentencing court may not have believed that he had provided a full and truthful account of his knowledge concerning the offense.

*United States v. Landsaw*, 206 F. App'x 773, 776–77 (10th Cir. 2006).

Indeed, Mr. Herrera-Zamora has never represented that, if he had been allowed "the opportunity to proffer information to the government," there is a reasonable probability that the sentencing court would "have believed that he had provided a full and truthful account of his knowledge concerning the offense." *See id.* Consequently, Mr. Herrera-Zamora has failed to demonstrate that there is a reasonable probability that, but for his retained attorney's allegedly improper advice, the sentencing court would have granted safety-valve relief. More fundamentally, Mr. Herrera-Zamora has not

12

demonstrated that reasonable jurists could debate the district court's resolution of his *Strickland* claim or believe that there were issues that warranted proceeding further.

## III

For the foregoing reasons, we **DENY** Mr. Herrera-Zamora's request for a COA and accordingly **DISMISS** his appeal.

Entered for the Court

JEROME A. HOLMES
Circuit Judge

13