**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 20, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

In re:  RUMSEY LAND COMPANY,
LLC,

     Debtor.

------------------------------

RUMSEY LAND COMPANY, LLC,

     Plaintiff - Appellant,

v.

RESOURCE LAND HOLDINGS, LLC;
SORIN NATURAL RESOURCE
PARTNERS, LLC; PUEBLO BANK AND
TRUST COMPANY, LLC,

     Defendants - Appellees.

No. 18-1452

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:16-CV-02117-CMA-SKC)**
_____

Ronald L. Wilcox, Wilcox Law Firm, LLC, Denver, Colorado for Plaintiff - Appellant.

David M. Rich, Minor & Brown, P.C., Denver, Colorado, and Sarah B. Wallace, Ballard
Spahr LLP, Denver, Colorado, (Andrew J. Petrie, Ballard Spahr LLP, Denver, Colorado,
with them on the brief) for Defendants - Appellees.
_____

Before **HARTZ**, **SEYMOUR**, and **MATHESON**, Circuit Judges.
_____

**MATHESON**, Circuit Judge.

_____

This appeal stems from a dispute involving land sold at a bankruptcy auction. Rumsey Land Company, LLC ("Rumsey") owned a property subject to a first deed of trust held by Pueblo Bank & Trust Company, LLC ("PBT"). In 2010, Rumsey filed for bankruptcy. Resource Land Holdings, LLC ("RLH")[1] offered to purchase the property, but the bankruptcy court did not approve the sale. Shortly thereafter, PBT purchased the property at a bankruptcy auction. PBT then transferred the land to RLH.

In 2015, Rumsey discovered that during the bankruptcy proceedings, RLH had entered a loan purchase agreement to purchase PBT's interest in the property. The agreement eventually led to litigation in state court between RLH and PBT, which culminated with a settlement agreement allowing RLH to purchase Rumsey's property from PBT for $4.75 million.

Rumsey believed the loan agreement, lawsuit, and settlement influenced the price at its bankruptcy auction. It initiated this adversarial proceeding in bankruptcy court against RLH and PBT (collectively "Defendants"), alleging (1) fraudulent concealment in violation of state law and (2) collusive bidding activities in violation of 11 U.S.C. § 363(n). The case was transferred to federal district court, which granted summary

_____

[1] RLH is a registered agent of the third defendant in this case, Sorin Natural Resource Partners, LLC. For simplicity, the parties and the district court referred to Sorin and RLH collectively as "RLH." We do the same.

2

judgment to Defendants on both claims. Exercising jurisdiction under 28 U.S.C § 1291 and § 1294(1), we affirm.

On the fraudulent concealment claim, we affirm summary judgment for RLH on the alternative ground that RLH was not a party to a business transaction with Rumsey and therefore had no duty to disclose information. We affirm summary judgment for PBT because Rumsey forfeited its arguments about PBT's duty to disclose and has not argued plain error on appeal.

On the § 363(n) collusive bidding claim, we distinguish between Rumsey's alternative requests (1) to avoid the bankruptcy sale and (2) for damages. As to the former, we affirm summary judgment for Defendants on the alternative ground that the claim was time-barred by the one-year limitations period in Federal Rule of Civil Procedure 60(c)(1). As to damages, we affirm summary judgment because Rumsey failed to demonstrate a genuine dispute of material fact as to whether Defendants intended to control the sale price at the bankruptcy auction.

## I. **BACKGROUND**

### A. *Factual Background*

Rumsey, a Colorado-based limited liability company, owned real property in Evans, Elizabeth, and Nederland, Colorado. In January 2010, it filed for bankruptcy in the United States Bankruptcy Court for the District of Colorado. At the time it filed for bankruptcy, Rumsey's holdings included a property known as the Rumsey Farm ("the property" or "the land"), which was encumbered by a first deed of trust held by PBT.

3

### 1. RLH's Initial Attempts to Acquire the Property

In March 2010, RLH attempted to purchase the property from Rumsey. It discussed with Rumsey the possibility of buying the PBT loan but ultimately offered to purchase the property for $7,484,397.75.

In April 2010, Rumsey filed a motion to approve the sale with the bankruptcy court. Because three creditors objected, the court denied the motion and instructed Rumsey to market the property more broadly.

### 2. RLH and PBT's Loan Purchase Agreement and Lawsuit

Because RLH could not acquire the property from Rumsey directly, it decided to pursue the possibility of purchasing the debt Rumsey owed to PBT. On December 1, 2010, RLH signed a written loan purchase agreement ("the loan purchase agreement" or "the agreement") to purchase the debt from PBT for $4.93 million. The agreement contained a confidentiality provision prohibiting disclosure of the agreement or its terms. The parties did not disclose the agreement to Rumsey or to the bankruptcy court.

On February 1, 2011, PBT refused to close on the loan purchase agreement. On March 15, RLH sued PBT to enforce the agreement. As explained below, this lawsuit eventually settled. The parties did not inform Rumsey about the lawsuit.

### 3. Rumsey's Bankruptcy Auction

In early March 2011, the bankruptcy court approved the sale and notice procedures to auction the property. On March 31, 2011, RLH submitted a $4 million

4

stalking horse bid.[2]  The same day, PBT submitted a credit stalking horse bid, which did

not offer new money but agreed to reduce Rumsey's debt by $5 million.  Rumsey

selected PBT's bid as the stalking horse.

Shortly after Rumsey selected PBT as the stalking horse bidder, RLH's counsel

e-mailed PBT regarding the pending lawsuit with RLH.  He noted that "[t]he indications

that RLH has received from [Rumsey's] marketing agent are that RLH was the second

place contender to be the stalking horse and no other offers were really in the ball park."

App. at 949.  He then added,

> [PBT] and [RLH] may turn out to be the only two horses in
> this race.  If that should come to pass, there may be some
> avenues for a consensual resolution of the disputes between
> our clients . . . . Naturally, collusive bidding is inappropriate
> and I'm not suggesting anything like that, but the bankruptcy
> court might be a good forum for a global resolution.

*Id.*  PBT's counsel responded that it did "not want to create the appearance or impression

of any sort of impropriety or collusive bidding to which . . . some other interested party

could object pursuant to Section 363(n) of the Bankruptcy Code."  *Id.* at 1019.  It

therefore suggested that "until the auction and sale process is concluded, . . . it would be

---

[2] "A 'stalking horse' contract is a first, favorable bid strategically solicited by the bankrupt company to prevent low-ball offers." *In re WestPoint Stevens, Inc.*, 600 F.3d 231, 239 n.3 (2d Cir. 2010).  "A stalking horse bidder . . . makes an initial bid to purchase the assets of a debtor. . . . Stalking horse bidders often contract to receive a 'break-up-fee' compensating it for its bidding activities should a higher bid ultimately emerge and win an eventual asset auction." *Brown Media Corp. v. K & L Gates, LLP*, 586 B.R. 508, 518 (E.D.N.Y. 2018).

unwise to engage in any dispute resolution or settlement discussions, of any nature, which may involve the property to be sold at the auction or the underlying loan documents held by [PBT]." *Id.*

On May 11, 2011, Rumsey auctioned the property. RLH did not participate in the auction. Confluence Resource Holdings, LLC ("Confluence") placed the winning bid.

On May 25, 2011, Rumsey submitted a Proposed Sale Order, which contained the following representation:

> The Debtor and each Successful Bidder and the Back-Up Bidder have fully disclosed all consideration to be given by each Successful Bidder and the Back-Up Bidder and all other agreements or arrangements entered into by each Successful Bidder and the Back-Up Bidder in connection with the sale of the Assets.

*Id.* at 963. RLH and PBT both received copies of the Proposed Sale Order, but neither disclosed their loan purchase agreement or lawsuit.

The bankruptcy court entered the Proposed Order on June 17, authorizing Confluence as the successful bidder and PBT as the back-up bidder. In August, Confluence announced it would not proceed with closing. As a result, Rumsey accepted PBT's back-up bid.

4. **Defendants' Settlement Agreement**

On September 13, 2011, RLH and PBT agreed to settle their lawsuit. As part of their settlement, they agreed that after PBT acquired the property through the bankruptcy sale, it would sell the property to RLH for $4.75 million. On September 20, the parties entered a contract formalizing this agreement.

6

5. **Sale to PBT and Later Transfer to RLH**

On October 4, 2011, PBT moved the bankruptcy court to approve transfer of the property from Rumsey to PBT. In the motion, PBT represented that the property was "free and clear of all liens, encumbrances, claims, and interests." *Id.* at 1021. PBT provided a non-exhaustive list of liens and encumbrances but did not disclose the loan purchase agreement or settlement with RLH. The bankruptcy court's proposed Supplemental Sale Order also did not mention the loan purchase agreement, and it specified that "[t]he acquisition of the Assets is undertaken by [PBT] without collusion and in good faith." *Id.* at 1034. Both RLH and PBT received copies of the Order, which the bankruptcy court entered on October 6, 2011, thereby transferring the property to PBT. On October 13, PBT conveyed the property to RLH.

6. **Discovery of Defendants' Loan Purchase Agreement and Settlement**

PBT and RLH never disclosed their loan purchase agreement, lawsuit, or settlement to Rumsey, and Rumsey did not learn of the agreement until 2015. Rumsey stated that "the [agreement] and subsequent efforts to enforce it had the effect of limiting RLH's bid to the amount agreed to by RLH and PBT," and that it "would have objected to credit bidding as a part of the sale process if it had known of the [agreement]." *Id.* at 964.

\* \* \* \*

The following table summarizes the events described above.

7

| Events Relating to Sale of The Property | | Events Relating to Loan Purchase Agreement | |
| --- | --- | --- | --- |
| 01/15/2010 | Rumsey files for bankruptcy. | | |
| 03/08/2010 | RLH offers to purchase the property for approximately $7.5 million. | | |
| 09/03/2010 | Bankruptcy court denies Rumsey's motion to approve sale to RLH. | | |
| | | 12/01/2010 | RLH signs agreement to purchase debt from PBT for $4.93 million. |
| | | 02/01/2011 | PBT refuses to close on loan purchase agreement. |
| 03/02/2011 | Bankruptcy court approves sale and notice procedures for bankruptcy auction of the property. | | |
| | | 03/15/2011 | RLH sues PBT to enforce loan purchase agreement. |
| 03/31/2011 | RLH and PBT submit stalking horse bids. Rumsey selects PBT as the stalking horse. | | |
| 05/11/2011 | Rumsey auctions the property. Confluence places winning bid. | | |
| 05/25/2011 | Rumsey submits Proposed Sale Order specifying parties have disclosed agreements related to the property. | | |
| 06/17/2011 | Bankruptcy court enters Proposed Sale Order designating Confluence as winning bidder and PBT as back-up bidder. | | |
| 08/15/2011 | Confluence backs out of sale, leaving PBT as winning bidder. | | |
| | | 09/13/2011 | RLH and PBT agree to settle lawsuit; parties agree that PBT will transfer the property to RLH for $4.75 million. |
| | | 09/20/2011 | RLH and PBT enter contract formalizing settlement and sale from PBT to RLH. |
| 10/04/2011 | PBT files motion to transfer the property from Rumsey to PBT. It represents that property is free of liens and encumbrances and that acquisition of assets was undertaken without collusion. | | |
| 10/06/2011 | Bankruptcy court enters Supplemental Sale Order transferring the property to PBT. | | |
| | | 10/13/2011 | PBT transfers the property to RLH. |

B. *Procedural Background*

### 1. Adversarial Proceeding Against RLH and PBT

In 2015, Rumsey initiated an adversarial proceeding against Defendants in bankruptcy court. Its complaint alleged Defendants "entered into a secret collusive agreement which had the effect of corrupting the bidding mechanism approved by the Court." *Id*. at 442. Specifically, Rumsey noted RLH initially offered to purchase Rumsey Farm from it for approximately $7.5 million and later agreed to purchase PBT's loan for $4.9 million.[3] Rumsey alleged that the loan purchase agreement between RLH and PBT was "[a] 'secret deal' [that] allowed [RLH] to acquire the Rumsey Farm for a savings of $2.5 million based on the price that they originally bid" and "deprived [Rumsey's] creditors of . . . $2.5 million." *Id.* at 443.

### 2. Bankruptcy Court Proceedings

The bankruptcy court re-opened Rumsey's bankruptcy case, and Rumsey filed an amended complaint asserting six causes of action: (1) fraud on the court (against Defendants), (2) violation of 11 U.S.C. § 363(n)'s prohibition of collusive bidding activities (against Defendants), (3) breach of contract (against PBT), (4) negligence (against Defendants), (5) fraudulent concealment (against Defendants), and (6) breach of the duty of good faith and fair dealing (against PBT). On the § 363(n) claim, Rumsey

---

[3] As noted above, RLH acquired the property from PBT for $4.75 million after the auction.

9

requested two alternative forms of relief:  "that the Bankruptcy Court avoid the sale" or

"[i]n the alternative, . . . that PBT and RLH be required to pay damages in the amount by

which the value of the property sold exceeds the price at which such sale was

consummated . . . ."  *Id.* at 519.

RLH and PBT filed separate motions to dismiss for failure to state a claim.  The

bankruptcy court denied the motions, finding Rumsey had "alleged facts supporting a

conclusion" that PBT and RLH "reached a secret understanding or agreement regarding

the sale of [Rumsey's] Assets, which agreement improperly lowered the ultimate sale

price."  *Id.* at 689.  The court also found Rumsey "alleged sufficient facts to support a

conclusion that the agreement between RLH and [PBT] controlled the bidding price for

the sale of" the property.  *Id.* at 691.

3.  **District Court Proceedings**

RLH filed a Motion to Withdraw Reference[4] to the bankruptcy court, and the

proceedings were transferred to the United States District Court for the District of

Colorado.  RLH then moved for summary judgment on claims 1, 2, 4, and 5, arguing that

---

[4] A Motion to Withdraw Reference allows a party to a bankruptcy proceeding to move the proceeding from bankruptcy court to federal district court.  The Bankruptcy Law Manual explains:  "Congress provided in § 157(a) of Title 28 that each district court could provide that any or all cases and any or all proceedings arising in, under, or related to the case be 'referred' to the bankruptcy judges in the district. . . . Section 157(d) then provides that the district court may withdraw the reference of any case or proceeding, in whole or in part, that has been previously referred. . . . The district court may, on a discretionary basis, withdraw the reference . . . upon 'timely' motion of a party."
1 Bankruptcy Law Manual § 2:11 (5th ed. 2019).

each was time-barred and that Rumsey "[could not] meet [its] burden to produce evidence supporting any of [its] claims." *Id.* at 734. PBT moved to join RLH's motion for summary judgment, which the court granted. PBT also moved for dismissal of claims 3 and 6 for breach of contract and breach of duty of good faith and fair dealing, arguing those claims were "predicated on Rumsey . . . being successful in proving [the other four claims]." *Id.* at 952.

The district court first addressed RLH's statute of limitations argument. The court listed the relevant limitations periods for each of Rumsey's claims, including the § 363(n) claim. It stated that the § 363(n) claim was "governed by Federal Rule of Civil Procedure 60(b)'s one-year limitations period."[5] *Id.* at 1481. It then suggested for all claims, including the § 363(n) claim, "there [was] a genuine dispute of material fact as to when Rumsey's causes of action accrued." *Id.* at 1483. It thus denied RLH's motion "to the extent that [it sought] to dismiss Rumsey's claims on the grounds of statutes of limitations." *Id.*[6]

---

[5] This one-year limitations period is described in Federal Rule of Civil Procedure 60(c)(1). As we explain below, the limitations period governs motions brought under Rule 60(b). Because of this, courts and litigants sometimes describe it as "Rule 60(b)'s one-year limitations period." Here, we refer to the limitations period using its precise location in Rule 60(c)(1).

[6] As we explain later, this analysis was flawed in two ways. First, the district court applied the Rule 60(c)(1) limitations period to Rumsey's claim for damages. This was incorrect because Rule 60(c)(1) does not apply when a § 363(n) plaintiff seeks only damages. Second, the district court conducted an accrual analysis for the § 363(n) claim. This was error because Rule 60(c)(1)'s one-year limitations period is absolute and runs from the date of the entry of judgment.

11

The court then granted summary judgment on the merits as to all six of Rumsey's claims. The rulings on only two—the fraudulent concealment claim and the § 363(n) claim—are challenged on appeal.

First, on the fraudulent concealment claim, the district court stated that "[t]here is no general duty for all participants in market transactions to disclose material, nonpublic information," *id.* at 1486, and that a duty to disclose arises only if the parties have "a fiduciary or other similar relation of trust and confidence," *id.* at 1485. It granted summary judgment for RLH because it found "Rumsey [had] not offered evidence of a relationship of trust and confidence between it and . . . RLH." *Id.* at 1486. The court also granted summary judgment for PBT because "Rumsey focuse[d] exclusively on its relationship with . . . RLH" and did "not proffer any argument about why . . . PBT in particular owed it a duty to disclose." *Id.* at 1488.

Second, on the § 363(n) claim, the court granted summary judgment for Defendants because "Rumsey [did] not set forth specific facts from which a rational trier of fact could infer that . . . RLH and PBT entered into the Loan Purchase Agreement with intent that the Agreement control the price." *Id.* at 1492.

## II. **DISCUSSION**

This appeal presents two issues: (1) whether the district court erred in granting summary judgment for Defendants on Rumsey's fraudulent concealment claim, and (2) whether the district court erred in granting summary judgment for Defendants on Rumsey's § 363(n) claim. As to both issues, we present the standard of review for

12

summary judgment and the Tenth Circuit's law on forfeiture. We then turn to the

fraudulent concealment and § 363(n) collusive bidding claims.

A. *Background Law*

1. **Standard of Review**

"We review the grant or denial of summary judgment de novo, applying the same

standard of review as the district court." *S.E.C. v. Cochran*, 214 F.3d 1261, 1264 (10th

Cir. 2000). "The court shall grant summary judgment if the movant shows that there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248-51 (1986). "There is a genuine issue of material fact if a rational jury could find in

favor of the nonmoving party on the evidence presented." *Fassbender v. Correct Care

Sols., LLC*, 890 F.3d 875, 882 (10th Cir. 2018) (quotations omitted).

"The movant bears the initial burden of making a prima facie demonstration of the

absence of a genuine issue of material fact . . . ." *Adler v. Wal-Mart Stores, Inc.*, 144

F.3d 664, 670 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986)). The movant may carry this burden "by 'showing'—that is, pointing out to the

district court—that there is an absence of evidence to support the nonmoving party's

case." *Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party to "set

forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at

256.

13

When applying this standard, courts "view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000).

2. **Forfeiture**

"It is the general rule . . . that a federal appellate court does not consider an issue not passed upon below." *Singleton v. Wulff*, 428 U.S. 106, 120 (1976). Accordingly, "if the theory [a party urges on appeal] simply wasn't raised before the district court, we usually hold it forfeited." *Paycom Payroll, LLC v. Richison*, 758 F.3d 1198, 1203 (10th Cir. 2014) (quotations omitted).

Our case law explains "what kind of specificity is required in the trial court in order to preserve an issue for appeal." *Lyons v. Jefferson Bank & Tr.*, 994 F.2d 716, 721 (10th Cir. 1993). Although "[p]leadings and motions in the trial court will be given a liberal reading," *Tele-Commc'ns, Inc. v. Comm'r.*, 104 F.3d 1229, 1233 (10th Cir. 1997), we do not address "bald-faced new issue[s]," "theor[ies] that [were] discussed in a vague and ambiguous way," or "issues that were raised and then abandoned pre-trial," *Lyons*, 994 F.2d at 722.

We also do not address "arguments raised in the District Court in a perfunctory and underdeveloped manner." *Tele-Commc'ns*, 104 F.3d at 1233 (quoting *Kensington Rock Island Ltd. P'ship v. Am. Eagle Historic Partners*, 921 F.2d 122, 124-25 n.1 (7th Cir. 1990) (alterations omitted)). "[V]ague, arguable references to a point in the district

14

court proceedings do not . . . preserve the issue on appeal." *Lyons*, 994 F.2d at 721 (quotations omitted). "Fleeting references" to an argument are also insufficient. *Tele-Commc'ns*, 104 F.3d at 1233-34 (issue forfeited where brief to the tax court "contain[ed] only a single paragraph addressing the issue," but "[o]n appeal, [that] fleeting contention bec[ame] ten pages of argument, replete with examples and citations").

To urge reversal of an issue that was forfeited in district court, an appellant must argue plain error. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1128 (10th Cir. 2011). If an appellant does not explain how its forfeited arguments survive the plain error standard, it effectively waives those arguments on appeal. *See McKissick v. Yuen*, 618 F.3d 1177, 1189 (10th Cir. 2010) (noting that "even if [a party's] arguments were merely forfeited before the *district court*, [the] failure to explain . . . how they survive the plain error standard waives the arguments in *this* court"); *see also United States v. Qualls*, 741 F. App'x 592, 596 (10th Cir. 2018) (unpublished) (holding that appellant waived a forfeited argument "because his briefing made no mention of the plain error standard of review"); *United States v. Herrera-Zamora*, 647 F. App'x 855, 858-59 (10th Cir. 2016) (unpublished) ("[Appellant] makes his two remaining arguments for the first time on appeal. Because he does so without arguing for plain-error review, these arguments are

15

effectively waived on appeal.").[7]  "[F]ailure to argue for plain error and its application on appeal[] surely marks the end of the road for an argument . . . not first presented to the district court."  *Richison*, 634 F.3d at 1131.

## B. *Fraudulent Concealment Claim*

We affirm the grant of summary judgment on Rumsey's fraudulent concealment claim.  As to RLH, the district court granted summary judgment because it found Rumsey and RLH were not in a relationship of trust and confidence as described in the Restatement (Second) of Torts § 551(2)(a).  We affirm on the alternative ground that RLH was not a party to a business transaction with Rumsey and therefore had no duty to disclose under § 551(2).  As to PBT, the district court granted summary judgment because it found that Rumsey "[did] not proffer any argument about why . . . PBT in particular owed it a duty to disclose."  App. at 1488.  We affirm because Rumsey has forfeited its arguments about PBT and has not argued plain error on appeal.

### 1. **Legal Background**

Under Colorado law,[8] a plaintiff claiming fraudulent concealment must prove five elements:

---

[7] Although not precedential, we find the reasoning of the unpublished opinions cited in this opinion instructive.  *See* 10th Cir. R. 32.1 ("Unpublished decisions are not precedential, but may be cited for their persuasive value."); *see also* Fed. R. App. P. 32.1.

[8] Rumsey's fraudulent concealment claim is a state law tort claim.  Accordingly, we apply Colorado law.  *See Alpine Bank v. Hubbell*, 555 F.3d 1097, 1109-12 (10th Cir. 2009) (applying Colorado law to a state law fraudulent concealment claim where jurisdiction was based on bankruptcy law); *In re ms55, Inc.*, 420 B.R. 806, 820 n.6

16

> (1) the concealment of a material existing fact that in equity and good conscience the defendant should have disclosed; (2) knowledge on the defendant's part that such a fact was being concealed; (3) ignorance of that fact on the plaintiff's part; (4) the intention that the concealment be acted upon; and (5) action on the concealment resulting in damages.

*Rocky Mountain Expl., Inc. v. Davis Graham & Stubbs LLP*, 420 P.3d 223, 234 (Colo. 2018).

To satisfy the first element, the "plaintiff must show that the defendant had a duty to disclose material information." *Mallon Oil Co. v. Bowen/Edwards Assocs., Inc.*, 965 P.2d 105, 111 (Colo. 1998). Colorado courts look to the Restatement (Second) of Torts § 551 to determine whether a party has a duty to disclose. *See Level 3 Commc'ns, LLC v. Liebert Corp.*, 535 F.3d 1146, 1163-64 (10th Cir. 2008); *Mallon Oil*, 965 P.2d at 111. That section provides:

> One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.

Restatement (Second) of Torts § 551(1) (Am. Law. Inst. 1977). It then describes five situations when a duty to disclose might arise:

> (2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,

(Bankr. D. Colo. 2009) (discussing Tenth Circuit choice of law analysis for state law claims where jurisdiction is based on bankruptcy law).

(a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them; and

(b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and

(c) subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so; and

(d) the falsity of a representation not made with the expectation that it would be acted upon, if he subsequently learns that the other is about to act in reliance upon it in a transaction with him; and

(e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

Restatement (Second) of Torts § 551(2)(a)-(e).  Each subsection of § 551(2) gives rise to an independent duty to disclose.  *See, e.g.*, *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1109-12 (10th Cir. 2009) (recognizing § 551(2)(a) as basis for a duty to disclose); *Level 3 Commc'ns*, 535 F.3d at 1163-64 (recognizing § 551(2)(b) as basis for a duty to disclose); *Mallon Oil*, 965 P.2d at 111 (recognizing § 551(2)(e) as basis for a duty to disclose).

The disclosure duties described in § 551(2)(a)-(e) apply only to "part[ies] to a business transaction."  Restatement (Second) of Torts § 551(2).  Our case law is in accord.  In cases where we have considered whether § 551(2) triggered a duty to disclose,

18

the parties have always been engaged in business transactions. *See, e.g.*, *Level 3 Commc'ns*, 535 F.3d at 1149, 1163-64 (considering whether there was a duty to disclose between two parties who directly contracted for the sale and purchase of batteries)[9]; *Berger v. Sec. Pac. Info. Sys., Inc.*, 795 P.2d 1380, 1382 (Colo. App. 1990) (considering whether there was a duty to disclose between employer and employee). And in at least one unpublished case, a Colorado district court stated it was "aware of no[] [cases] that [have] found a duty to disclose the terms of a contract to non-parties who may be affected by the agreement." *Spring Creek Expl. & Prod. Co., LLC v. Hess Bakken Inv. II, LLC*, No. 14-CV-00134, 2014 WL 4400764, at *13 (D. Colo. Sept. 5, 2014) (unpublished).

## 2. **Analysis**

We analyze Rumsey's fraudulent concealment claim as to each defendant, RLH and PBT. We begin with the claim against RLH. We first consider whether Rumsey forfeited its arguments against RLH by failing to present them to the district court. We conclude Rumsey did not forfeit its § 551(2)(b) and (e) arguments about RLH because it raised those arguments in its opposition to RLH's motion for summary judgment. We next consider whether the district court properly granted summary judgment for RLH on

---

[9] Although contractual partners qualify as parties to a business transaction, a contractual relationship is not required under § 551(2)(b). *See, e.g.*, *Church Mut. Ins. Co. v. Coutu*, No. 17-CV-00209, 2018 WL 1517022, at *4 (D. Colo. Mar. 28, 2018) ("Although [Black's Law Dictionary] gives as an example [of a 'party'] 'a party to the contract,' the Court does not consider that to be the universe of parties who can take part in a transaction [under § 551(2)(b)].").

the fraudulent concealment claim. We affirm on the alternative ground that RLH was not party to a business transaction and therefore had no duty to disclose under § 551(2).

As to Rumsey's fraudulent concealment claim against PBT, we conclude that Rumsey did not advance any specific arguments about PBT's duty to disclose. Rumsey thus forfeited its duty-to-disclose arguments about PBT in district court. Rumsey also has not argued plain error on appeal. Its failure to do so effectively waives the fraudulent concealment claim as to PBT in this court. We therefore affirm the district court without addressing the merits of Rumsey's fraudulent concealment claim against PBT.

a. *Fraudulent concealment claim against RLH*

i. Forfeiture analysis

Defendants argue Rumsey forfeited its arguments about RLH's duties under Restatement § 551(2)(b) and (e). *See* Aplee. Br. at 23 ("Rumsey . . . cannot make new arguments on appeal regarding RLH."). We disagree.

In its opposition to RLH's motion for summary judgment, Rumsey explicitly argued RLH had a duty to disclose the loan purchase agreement. Rumsey quoted § 551(2)(b) and (e) in full. It also provided facts to support a duty of disclosure under § 551(2)(b) and (e).

For example, Rumsey:

- Identified specific, "clearly ambiguous" statements that RLH made to Rumsey's broker. App. at 968.

- Explained how these statements could be interpreted in multiple ways and argued that the statements were "misleading in light of the fact that RLH and PBT had [already] entered into the [loan purchase agreement]." *Id.*

20

- Argued RLH had "an affirmative duty" to correct misleading representations made in the proposed sale orders submitted on May 25, 2011 and October 4, 2011. *Id.* at 970.

In addition, Rumsey argued RLH should have been aware that Rumsey "would reasonably expect disclosure of an agreement by RLH to purchase PBT's loan" because knowledge of the purchase agreement "was necessary to enable [Rumsey's broker], in conjunction with the debtor and objecting creditors, to determine how to proceed with an auction." *Id.* Rumsey thus alleged disclosure was required "in light of the relationship between [the parties], the customs of the trade[,] and other objective circumstances." *Id.*

Rumsey's opposition to Defendant's motion for summary judgment presented more than "vague, arguable references" to § 551(2)(b) and (e). *Lyons*, 994 F.2d at 721. Instead, it "actually articulated" § 551(2)(b) and (e) arguments, *Tele-Commc'ns*, 104 F.3d at 1233, and "[gave] the basis for [those] argument[s]" to the district court, *United States v. Immordino*, 534 F.2d 1378, 1381 (10th Cir. 1976). Accordingly, Rumsey did not forfeit its § 551(2)(b) and (e) arguments about RLH.

b. *Summary judgment for RLH*

The district court granted summary judgment for RLH because it found no relationship of trust and confidence giving rise to a duty to disclose under § 551(2)(a). As discussed above, however, § 551(2)'s disclosure duties apply only to parties that have entered into business transactions. Here, RLH was not a party to a business transaction with Rumsey. Although RLH made an initial offer to purchase Rumsey's land and later placed an unsuccessful stalking horse bid on the property, RLH did not contract to buy

21

anything from Rumsey. *See, e.g.*, *Level 3 Commc'ns*, 535 F.3d at 1149, 1163-64 (recognizing duty to disclose between two parties who directly contracted for the sale and purchase of batteries). It also never contracted to perform services for Rumsey, and it was not part of an employment relationship with Rumsey. *See, e.g.*, *Wood v. Houghton Mifflin Harcourt Publ'g Co.*, 589 F. Supp. 2d 1230 (D. Colo. 2008) (recognizing duty to disclose arising from contract between photographer and publisher); *Berger v. Sec. Pac. Info. Sys., Inc.*, 795 P.2d 1380, 1382 (Colo. App. 1990) (recognizing duty to disclose between employer and employee). Rumsey identifies no other interaction with RLH that would constitute a business transaction.

We conclude RLH was not party to a business transaction with Rumsey. RLH was thus not subject to the disclosure duties in § 551(2). We affirm the district court's summary judgment for RLH on this alternative ground.

c. *Fraudulent concealment claim against PBT*

Defendants argue Rumsey forfeited all arguments about PBT because "[i]n responding to the motions for summary judgment, Rumsey . . . focused exclusively on RLH's duty . . . and it was only in its Opening Brief to this Court that Rumsey . . . for the first time assert[ed] that [PBT] also had a duty to disclose." Aplee. Br. at 29. We agree.

Although Rumsey preserved its arguments about RLH's duty to disclose under § 551(2)(b) and (e), it forfeited any arguments about PBT's disclosure duties. In its opposition to RLH's motion for summary judgment, Rumsey did not make any specific allegations about PBT's duty to disclose. Instead, it focused exclusively on RLH and

22

supported its arguments using facts specific to RLH. For example, Rumsey argued RLH had a duty to correct misleading statements it made to Rumsey's broker. But Rumsey did not identify any situations where PBT similarly made false or misleading statements that might have triggered a disclosure duty.

Because PBT joined RLH's motion for summary judgment, Rumsey could have advanced arguments in district court about both Defendants in its opposition brief. It did not. It made no arguments about PBT's duty to disclose. Any reference to PBT's duty was done only in "a vague and ambiguous way," *Lyons*, 994 F.2d at 722, or "in a perfunctory and underdeveloped manner," *Tele-Comm'cns*, 104 F.3d at 1233. Such references are not sufficient to preserve an issue for appellate review. Rumsey thus forfeited its arguments about PBT. Rumsey's failure to explain now how these forfeited arguments "survive the plain error standard waives the arguments in *this* court." *McKissick*, 618 F.3d at 1189.

Because Rumsey forfeited its arguments about PBT and has not argued plain error on appeal, we affirm the district court without addressing the merits of Rumsey's fraudulent concealment claim against PBT. *See United States v. Branch*, 658 F. App'x 375, 376 (10th Cir. 2016) (unpublished) ("[B]ecause [appellant] . . . fails to argue for plain error review[,] . . . we decline to review his claims and affirm the district court.").

C. *Section 363(n) Collusive Bidding Claim*

We also affirm the grant of summary judgment on Rumsey's § 363(n) claim. We first consider whether Rumsey's § 363(n) claim was time-barred under Federal Rule of

23

Civil Procedure 60(c)(1). In its complaint, Rumsey requested two alternative forms of relief: (1) avoidance of the bankruptcy sale, or (2) damages. We conclude its § 363(n) claim was time-barred insofar as Rumsey sought to vacate the bankruptcy sale but was not time-barred insofar as Rumsey sought damages. We then consider whether the district court properly granted summary judgment for Defendants on the § 363(n) damages claim. We affirm the district court because Rumsey did not set forth specific facts to show that Defendants intended to control the sale price at the bankruptcy auction.[10]

1. **Legal Background**

   a. *Section 363(n)*

   Title 11 U.S.C. § 363(n) provides that a "trustee may avoid a [bankruptcy] sale . . . if the sale price was controlled by an agreement among potential bidders at such sale."[11]

---

[10] In district court, Rumsey presented its argument in opposition to summary judgment on its § 363(n) claim in a single, short paragraph. *See* App. at 974. Although its argument was sparse, we give Rumsey's "[p]leadings and motions in the trial court . . . a liberal reading," *Tele-Commc'ns, Inc.* 104 F.3d at 1233, and conclude that Rumsey sufficiently preserved its § 363(n) claim for appellate review. Defendants do not contend otherwise on appeal.

[11] On its face, § 363(n) applies only to bankruptcy trustees. But 11 U.S.C. § 1107(a) clarifies that, with a few exceptions, "a debtor in possession shall have all the rights . . . and powers, and shall perform all the functions and duties . . . of a trustee." Section 1107(a) does not include § 363(n) in its list of exceptions. Thus, a debtor in possession may act as a § 363(n) plaintiff and has the same rights, powers, and duties as a trustee for § 363(n) proceedings. *See, e.g.*, *In re Sunnyside Timber, LLC*, 413 B.R. 352, 358-59 (Bankr. W.D. La. 2009) (entertaining § 363(n) action brought by Chapter 11 debtors, even though separate trustees had been appointed); *In re N.Y. Trap Rock Corp.*, 42 F.3d 747 (2d Cir. 1994) (entertaining § 363(n) action brought by Chapter 11 debtors);

24

The section also allows a trustee to "recover from a party to [a bankruptcy sale] any amount by which the value of the property sold exceeds the price at which such sale was consummated." *Id.* Courts have divided this claim into "three essential elements": (1) an agreement, (2) between potential bidders, (3) that controls the price at bidding. *In re Sunnyside Timber, LLC*, 413 B.R. 352, 363 (Bankr. W.D. La. 2009); *see also In re Sanner*, 218 B.R. 941, 944 (Bankr. D. Ariz. 1998). Only the third element is at issue here.

"Congress explained that § 363(n) is 'directed at *collusive* bidding on property,'" which "indicates that Congress intended in Section 363(n) to prohibit only agreements that are intended to control a sale price, and not all agreements having the unintended consequence of influencing a sale price." *In re N.Y. Trap Rock Corp.*, 42 F.3d 747, 752 (2nd Cir. 1994). "The influence on the sale price must be an intended objective of the agreement, and not merely an unintended consequence, for the agreement among potential bidders to come within the prohibition of § 363(n)." *Id.*; *see also In re Sunnyside Timber*, 413 B.R. at 363-64 ("Section 363(n) only forecloses those agreements whose purpose is to control the sale price resulting from a section 363 sale. . . . The determining factor is the intent or purpose of the agreement."); *Ramsay v. Vogel*, 970 F.2d 471, 474 (8th Cir. 1992).

---

*see also* 2 William L. Norton III, Bankruptcy Law and Practice § 44:36 (3d ed. July 2019 Update) ("Code § 363(n) provides a mechanism by which trustees or debtors-in-possession can invalidate sales of assets tainted by collusion.").

b. *Limitations period for 363(n) claims*

As discussed above, § 363(n) provides two remedies for collusive bidding:  (1) avoidance of the bankruptcy sale, or (2) damages.  These remedies have different statutes of limitations.

In general, courts construe § 363(n) avoidance claims as motions under Federal Rule of Civil Procedure 60(b)(3), which permits courts to "relieve a party . . . from a final judgment, order, or proceeding" for "fraud . . . , misrepresentation, or misconduct by an opposing party."  Fed. R. Civ. P. 60(b)(3); *see* 2 Bankruptcy Desk Guide § 15:62 (2019) ("An action to avoid a sale order under § 363 is essentially a request to relieve a party from a final order under Rule 60(b)(3) . . . ."); *see also In re Sunnyside Timber*, 413 B.R. at 360-61 (construing party's § 363(n) claim as a Rule 60(b)(3) motion); *In re Clinton Street Food Corp.*, 254 B.R. 523, 529 (Bankr. S.D.N.Y. 2000) (same).  Section 363(n) avoidance claims are therefore subject to the one-year limitations period provided in Federal Rule of Civil Procedure 60(c)(1).  *See* Fed. R. Civ. P 60(c)(1) (stating that motions under 60(b)(1)-(3) must be brought "no more than a year after the entry of the judgment or order or the date of the proceeding"); *In re Int'l Nutronics, Inc.*, 28 F.3d 965, 968-69 (9th Cir. 1994) (trustee's § 363(n) claim to avoid sale barred by Rule 60(c)(1)); 2 Bankr. Desk Guide § 15:62 ("An action to avoid a sale order under § 363(n) . . . is . . . subject to the one-year limitation of Rule 60(c).").

Rule 60(c)(1)'s limitations period is "absolute."  *Tool Box, Inc. v. Ogden City Corp.*, 419 F.3d 1084, 1088 (10th Cir. 2005); *see also In re Clinton Street Food*, 254 B.R.

26

at 532 (one-year limitations period is "an absolute, outside limit"). It is not subject to tolling, and "the concept of reasonable time cannot be used to extend the one-year limit." 11 Charles Alan Wright and Arthur R. Miller, *Federal Practice & Procedure* § 2866 (3d ed. 2019). Thus, "[a] motion under [60(b)(3)]"—and avoidance actions under § 363(n)— "must be denied as untimely if made more than one year after judgment *regardless of whether the delay was reasonable*." *Id.* (emphasis added).[12]

Courts do not apply Rule 60(c)'s one-year limitations period when a § 363(n) plaintiff seeks damages rather than avoidance or vacatur of a bankruptcy sale. *See, e.g.*, *In re Am. Paper Mills of Vt., Inc.*, 322 B.R. 84, 88-90 (Bankr. D. Vt. 2004) (declining to apply Rule 60(c)'s one-year limitations period where plaintiff sought "damages under § 363(n), but [did] not seek to vacate the Sale Order"). Instead, courts apply the most analogous state statute of limitations. *See In re Taylorcraft Aviation Corp.*, 163 B.R. 734, 738 (Bankr. M.D. Pa. 1993) (applying state statute of limitations rather than Rule 60(c)(1) because the trustee sought damages but "[was] not seeking to avoid an Order approving the sale"). This is because "the linkage to Rule 60 breaks down when a

---

[12] *See also Tool Box*, 419 F.3d at 1088 (noting an "appeal does not toll or extend the one-year time limit of Rule 60(b)"); *In re Clinton Street Food*, 254 B.R. at 532 (noting "[no] authority suggesting that ignorance of the claims tolls the period of limitations under Fed. R. Civ. P. 60(b)(3)"); *Martins v. Charles Hayden Goodwill Inn Sch.*, 178 F.R.D. 4, 6 (D. Ma. 1997) (applying the one-year limitations period to bar plaintiff's 60(b)(2) claim even though plaintiff could not have discovered evidence in time to move for a new trial); *Gambocz v. Ellmyer*, 438 F.2d 915 (3d Cir. 1971) (applying one-year limitations period even though plaintiff alleged counsel had not notified him of the order dismissing his case).

27

plaintiff is asserting *only* a claim for damages under section 363(n)." *In re Sunnyside Timber*, 413 B.R. at 362. As one court explained,

> The section 363(n) cases that adopt the one-year time limit of Rule 60 are avoidance cases where the plaintiff seeks to modify or vacate a sale order. The rationale for applying the one-year time limit of Rule 60 in this context is that the avoidance remedy of section 363(n) is derived from the power to vacate an order under Rule 60, and thus must be subject to the limitations of that rule. Even if this analysis is correct, the linkage to Rule 60 breaks down when a plaintiff is asserting only a claim for damages under section 363(n). A section 363(n) damages claim does not seek to vacate or modify the court's order approving the sale.

*Id.*

### 2. Analysis

We first describe two errors the district court committed in analyzing Rumsey's § 363(n) claim. We then consider whether the one-year limitations period in Rule 60(c)(1) barred the claim. We conclude that Rule 60(c)(1) governs the § 363(n) claim insofar as Rumsey sought to avoid the bankruptcy sale. Rumsey's request to avoid the sale was thus time-barred. Rumsey's alternative claim for damages, however, was governed by Colorado state law and was not time-barred under Rule 60(c)(1).

Finally, we consider whether the district court properly granted summary judgment for Defendants on the § 363(n) damages claim. We conclude that it did, because Rumsey did not set forth specific facts in opposition to the summary judgment motion to demonstrate that Defendants intended to control the sale price at the bankruptcy auction.

28

a. *District court errors*

In granting summary judgment on Rumsey's § 363(n) claim, the district court committed two errors. First, the court applied Rule 60(c)(1)'s one-year limitations period to Rumsey's entire § 363(n) claim. But it did not acknowledge that Rumsey sought two alternative forms of relief: (1) avoidance of the bankruptcy sale or (2) damages. Rule 60(c)(1) does not apply when a § 363(n) plaintiff seeks only damages, and because Rumsey pled in the alternative, its § 363(n) damages request was, in effect, a request for *only* damages. The district court thus should not have applied Rule 60(c)(1) to Rumsey's § 363(n) damages claim. *See In re Sunnyside Timber*, 415 B.R. at 362; *In re Am. Paper Mills*, 322 B.R. at 88-90; *In re Taylorcraft Aviation*, 163 B.R. at 738.

Second, the district court conducted an accrual analysis and determined there was "a genuine dispute over a fact material to . . . the date the [§ 363(n)] cause[] of action accrued." App. at 1482. But as explained above, Rule 60(c)(1)'s limitations period is "absolute," *Tool Box*, 419 at 1088, and runs from the date of the entry of judgment. Because the district court determined that Rule 60(c)(1) applied, it should not have performed an accrual analysis.

b. *Timeliness*

The district court incorrectly applied Rule 60(c)(1)'s one-year limitations period to Rumsey's entire § 363(n) claim. But Rumsey requested two alternative forms of relief: (1) avoidance of the bankruptcy sale or (2) damages. *See* App. at 494 ("Plaintiffs requests [sic] that the sale be reversed and that the Rumsey Farm be returned to the

29

bankruptcy estate.  *In the alternative*[,] the Plaintiffs request that PBT and RLH be found liable for damages . . . ." (emphasis added)).  We address the timeliness of each request for relief in turn.  *See McGlohon v. United States*, 121 F. App'x. 854, 855 (Fed. Cir. 2005) (unpublished) (conducting separate statute of limitations analysis for alternatively-pled claims).

First, Rumsey sought to avoid the bankruptcy sale.  This request was subject to Rule 60(c)(1)'s one-year limitations period.  *See, e.g.*, *In re Int'l Nutronics*, 28 F.3d at 968-69 (trustee's claim seeking to avoid sale time-barred under Rule 60(c)(1)).  The limitations period began to run at the "entry of the judgment or order or the date of the proceeding."  Fed. R. Civ. P. 60(c)(1).  Rumsey brought its § 363(n) claim approximately four years after the bankruptcy court signed the Order of Sale.  Its request to avoid the bankruptcy sale was thus untimely under Rule 60(c)(1).  Insofar as Rumsey's § 363(n) claim sought to avoid the bankruptcy sale, we affirm the district court on the alternative ground that the claim was time-barred.

Second, Rumsey alternatively requested damages.  As discussed above, courts do not apply Rule 60(c)(1)'s limitations period when a party seeks only damages.  *See In re Sunnyside Timber*, 413 B.R. at 362; *In re Am. Paper Mills*, 322 B.R. at 88-90; *In re Taylorcraft Aviation*, 163 B.R. at 738-39.  To the extent Rumsey's § 363(n) claim requested damages, it was not subject to Rule 60(c)(1)'s one-year limitations period, but was instead subject to the most closely analogous state statute of limitations.  *See In re*

*Am. Paper Mills*, 322 B.R. at 90 (applying state law statute of limitations where § 363(n) trustee sought only damages).

The district court did not say which statute of limitations should apply to Rumsey's § 363(n) claim, and it did not determine whether the claim was timely under state law. Instead, the court granted summary judgment for Defendants because it found no genuine dispute of material fact as to whether Defendants intended to control the sale price at the bankruptcy auction. We likewise do not address the timeliness of Rumsey's § 363(n) damages claim, because we choose to affirm on the same ground as the district court.

c. *Summary judgment*

The district court said "Rumsey [did] not set forth specific facts from which a rational trier of fact could infer that Defendants . . . entered into the Loan Purchase Agreement with intent that the Agreement control the price." App. at 1492. We agree and affirm the summary judgment on Rumsey's § 363(n) claim for damages on this ground.

To avoid summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. Rumsey did not do so. In its opposition to Defendants' motion for summary judgment, Rumsey presented only a single paragraph to argue why summary judgment was not appropriate on the § 363(n) claim. This paragraph read, in full:

> Rumsey Land has met its burden of establishing the
> existence of an agreement between potential bidders that

31

> controls the sale price. The very purpose of RLH's lawsuit against PBT was to establish its contractual right to have the agreed upon amount of the [loan purchase agreement] control the sale price as between potential bidders RLH and PBT. As RLH alleged in its lawsuit [against PBT], absent the [agreement] and the lawsuit to enforce it, RLH might have had to make a cash bid that would have exceeded the amount agreed to in the [agreement]. Because of the [agreement] and the lawsuit to enforce it, RLH never had to exceed the amount agreed to in the [agreement].

App. at 974 (citations omitted).

Aside from these general and conclusory allegations, Rumsey offered no specific details to support its position. For example, the record contains communications between RLH and PBT acknowledging that "collusive bidding is inappropriate," *id.* at 949, and expressing the parties' mutual desire to avoid "the appearance or impression of any sort of impropriety," *id.* at 1019. Rumsey provided no evidence to contradict these communications or to show that, despite their caution, Defendants in fact intended to control the sale price. Rumsey also did not provide evidence showing "[t]he influence on the sale price [was] an intended *objective* of the agreement, and not merely an unintended consequence." *In re N.Y. Trap Rock*, 42 F.3d at 752 (emphasis added). Nor did it show that the "purpose of RLH's lawsuit . . . was to establish its contractual right to . . . control the sale price as between potential bidders RLH and PBT." *Id.* Instead, Rumsey offered only brief, vague, and general allegations, unsupported by facts or evidence. It thus

32

failed to carry its burden of "set[ting] forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.[13]

In district court, Rumsey did not identify evidence in the record to support its position. Although the district court "may 'go beyond the referenced portions' of the plaintiffs' evidentiary materials, '[it] is not required to do so.'" *Bird v. Regents of N.M. State Univ.*, 619 F. App'x 733, 740 (10th Cir. 2015) (unpublished) (quoting *Adler*, 144 F.3d at 672). On appeal, we also "ordinarily limit[] our review to the materials adequately brought to the attention of the district court by the parties." *Adler*, 144 F.3d at 671. "[W]e, like the district courts, have a limited and neutral role in the adversarial process, and are wary of becoming advocates who comb the record of previously available evidence and make a party's case for it." *Id.* at 672; *see also SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1513 (10th Cir. 1990) (a court of appeals "need not sift through the record to find . . . evidence" in the absence of citations in a party's brief (quotations omitted)). If there was evidence to support Rumsey's § 363(n) claim, it was Rumsey's responsibility—not the court's—to identify it.

---

[13] We conduct our summary judgment "review from the perspective of the district court at the time it made its ruling, ordinarily limiting our review to the materials adequately brought to the attention of the district court by the parties." *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1251 (10th Cir. 2015). We note, however, that even on appeal, Rumsey does not provide specific facts or evidence to support its § 363(n) claim. In its opening brief, Rumsey discusses its § 363(n) allegations in three brief paragraphs, which contain broad and conclusory allegations about "RLH's and [PBT's] specific intent to control the price." Aplt. Br. at 22. But Rumsey provides no specific facts or evidence to show that RLH and PBT in fact acted with this intent.

Because Rumsey did not provide any facts or evidence to demonstrate an issue of material fact on its § 363(n) claim, it failed to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The district court did not err in granting summary judgment for Defendants on Rumsey's § 363(n) claim for damages. We affirm.

## III. **CONCLUSION**

We affirm the district court's grant of summary judgment for Defendants.